*Attorney Grievance Commission of Maryland v. Arlene Adasa Smith-Scott*, Misc. Docket AG Nos. 8 & 64, September Term, 2018.  Opinion by Getty, J.

**ATTORNEY DISCIPLINE–SANCTION–DISBARMENT**

Respondent, Arlene Adasa Smith-Scott, violated several provisions of the Maryland Lawyer's Rules of Professional Conduct ("MLRPC") and the Maryland Attorneys' Rules of Professional Conduct ("MARPC") through her self-representation before the United States Bankruptcy Court for the District of Maryland and unrelated representation of Crystal Combs, Angela Plater, Furrah Deeba, Benjamin Thomas, Jr., John Thomas Jones, Jr., and Theresa Saunders.

Ms. Smith-Scott's conduct violated the following rules of professional conduct: 1.1 (Competence); 1.2 (Scope of Representation and Allocation of Authority); 1.3 (Diligence); 1.4 (Communication); 1.5 (Fees); 1.6 (Confidentiality of Information); 1.15 (Safekeeping Property); 1.16 (Declining or Terminating Representation); 3.1 (Meritorious Claims and Contentions); 3.2 (Expediting Litigation); 3.3 (Candor Toward the Tribunal); 3.4 (Fairness to Opposing Party and Attorney); 4.1 (Truthfulness in Statements to Others); 8.1 (Bar Admission and Disciplinary Matters); 8.4 (Misconduct); and 19-404 (Trust Account—Required Deposits).  This misconduct warrants disbarment.

Circuit Court for Prince George's County
Case No. CAE-18-23035
Argued: January 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG Nos. 8 & 64

September Term, 2018

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ARLENE ADASA SMITH-SCOTT

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Getty, J.

_____

Filed: June 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

"A person who represents himself [or herself] has a fool for a client."[1]

The instant attorney discipline case fortifies the import of this age-old adage often attributed to President Lincoln. Regrettably, the underlying conduct involves an attorney's overzealous self-representation in a voluntary bankruptcy proceeding in the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"). Over the course of the nearly three-year bankruptcy proceeding, among other things, the attorney filed countless frivolous pleadings, motions, and appeals, intentionally hindered the court-appointed trustee's ability to administer the case, and knowingly made false statements of fact in filings and appeals before the Bankruptcy Court and United States District Court for the District of Maryland ("U.S. District Court").

Moreover, this attorney represented several clients in Maryland's circuit courts, the Court of Special Appeals, and the Bankruptcy Court. In these instances, among other things, the attorney misappropriated client funds, made knowing misrepresentations to and intentionally concealed information from clients, and failed to prosecute clients' motions and appeals.

This attorney's conduct violated sixteen separate provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC"). For the reasons that follow, we hold that this attorney's conduct merits disbarment.

---

[1] This Court has had occasion to discuss this adage, often attributed to President Abraham Lincoln, in a previous attorney discipline case. *See Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 205 (2015); *see also* Marshall H. Tanick & Phillip J. Trobaugh, *Lincoln's Minnesota Legacy*, 66 Bench & B. Minn. 25, 28 (Feb. 2009).

## BACKGROUND

### *Procedural Context*

On June 27, 2018, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition I") with this Court alleging that Arlene Smith-Scott had violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rules").[2] *See* Md. Rule 19-721. On February 21, 2019, the Commission, acting through Bar Counsel, filed a second Petition for Disciplinary or Remedial Action ("Petition II") with this Court alleging that Ms. Smith-Scott violated the MLRPC by conduct unrelated to Petition I.

Petition I, which related to Ms. Smith-Scott's actions during a nearly three-year long personal bankruptcy case, and Petition II, which concerned Ms. Smith-Scott's unrelated representation of seven clients, together alleged that Ms. Smith-Scott violated the following Rules: 1.1 (Competence); 1.2 (Scope of Representation and Allocation of Authority); 1.3 (Diligence); 1.4 (Communication); 1.5 (Fees); 1.6 (Confidentiality of Information); 1.15 (Safekeeping Property); 1.16 (Declining or Terminating Representation); 3.1 (Meritorious Claims and Contentions); 3.2 (Expediting Litigation); 3.3 (Candor Toward the Tribunal); 3.4 (Fairness to Opposing Party and Attorney); 4.1 (Truthfulness in Statements to Others);

---

[2] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct and recodified in Title 19 of the Maryland Rules. Since Ms. Smith-Scott's misconduct occurred before and after the effective date of the recodification of the rules of professional conduct, she committed violations of the same rules of professional conduct under both the MLRPC and the MARPC. For simplicity, and because there is no substantive difference in the two codifications of the rules, we shall use the shorter designations of the MLRPC, e.g., "Rule 1.1."

8.1 (Bar Admission and Disciplinary Matters); 8.4 (Misconduct); 19-403 (Duty to Maintain Account);[3] and 19-404 (Trust Account—Required Deposits).

We designated Judge Peter K. Killough (the "hearing judge") of the Circuit Court for Prince George's County by Order dated June 28, 2018 to conduct a hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law. *See* Md. Rule 19-722(a). In relation to Petition I, Ms. Smith-Scott was personally served with process on July 30, 2018 and filed her Answer to Petition I on September 4, 2018. Bar Counsel filed a Motion to Consolidate Petition I and Petition II on February 21, 2019. We consolidated the two Petitions on March 6, 2019 and referred Petition II to the hearing judge. In relation to Petition II, Ms. Smith-Scott was personally served with process on April 1, 2019 and filed her Answer to Petition II on April 24, 2019.

The evidentiary hearing spanned five days: June 17, 18, 19, 20 and 28, 2019. In this Court, Bar Counsel filed exceptions to the hearing judge's findings of fact and recommended conclusions of law on November 13, 2019. Likewise, Ms. Smith-Scott filed exceptions to the same on November 15, 2019. This Court heard oral argument in this matter on January 10, 2020. We disbarred Ms. Smith-Scott and awarded costs against her by per curiam order dated January 10, 2020. *See Attorney Grievance Comm'n v. Smith-Scott*, 466 Md. 543, 543–44 (2020). We explain in this opinion the reasons for the per curiam order.

---

[3] The hearing judge did not make any determination as to whether Ms. Smith-Scott violated Rule 19-403. Bar Counsel did not except to the absence of the hearing judge's determination on this alleged violation, so we shall not consider it in the discussion that follows.

*Factual Findings*

We begin with a summary of the hearing judge's factual findings. Ms. Smith-Scott was admitted to the Bar of the State of Maryland on February 2, 2012. Since then, she has maintained a law office—Strategic Law Group, LLC—in Prince George's County, Maryland and has focused on representing individuals in Chapter 7 and Chapter 13 bankruptcy proceedings. The instant matter involves Ms. Smith-Scott's wrongdoing in her own personal bankruptcy case and multiple instances of misconduct spanning several different bankruptcy clients.

*Personal Bankruptcy Case*

Ms. Smith-Scott filed a voluntary bankruptcy petition under Chapter 11 of Bankruptcy Code in the Bankruptcy Court on September 28, 2014. *See In re: Arlene Smith-Scott,* Case No. 14-25022. The case was assigned to the Honorable James F. Schneider.[4]

At the time of the bankruptcy petition, Ms. Smith-Scott held title to three investment properties: (1) 367-371 Main Street, Laurel, Maryland (mortgage held by Patapsco Bank) ("367 Main Street");[5] (2) 511 Main Street, Laurel, Maryland (mortgage held by Patapsco

---

[4] The Honorable James F. Schneider served as an Associate Judge (1982–2001; 2005–2017) and Chief Judge (2001–2005) of the United States Bankruptcy Court for the District of Maryland.

[5] In 2015, Howard Bancorp acquired Patapsco Bancorp. *Howard Bankcorp, Inc. Completes Acquisition of Patapsco Bancorp, Inc.*, Howard Bank https://www.howardbank.com/maryland-banking-blog/Howard-Bancorp-Inc-Completes-Acquisition-of-Patapsco-Bancorp-Inc (last visited June 26, 2020), archived at https://perma.cc/K354-9YEC. Therefore, while we begin by discussing mortgages held by Patapsco Bank, we shall reference Howard Bank, as successor-in-interest to Patapsco Bank, beginning with events that occurred in September 2015.

4

Bank) ("511 Main Street," together with 367 Main Street the "Laurel Properties") ; and (3) 10 Stanley Drive, Catonsville, Maryland (mortgage held by U.S. Bank) ("10 Stanley Drive"). All three properties had multiple residential tenants; the Laurel Properties also had commercial tenants. Ms. Smith-Scott maintained her law office at 367 Main Street.

In March 2014, before Ms. Smith-Scott filed for bankruptcy, U.S. Bank exercised its contractual rights under an assignment of rents clause contained in its loan documents with Ms. Smith-Scott to collect rental income directly from the 10 Stanley Drive tenants. U.S. Bank's attorney, Bradley Swallow, contacted the tenants and instructed them to pay rent to U.S. Bank directly. Two days later, Ms. Smith-Scott wrote the tenants and instructed them to send rent to her directly or face eviction. In the letter, Ms. Smith-Scott claimed that U.S. Bank did not have a legal basis to collect the rent and instructed the tenants to file complaints against Mr. Swallow with the Commission.

On April 10, 2014, Ms. Smith-Scott filed a lawsuit against U.S. Bank and Mr. Swallow in the U.S. District Court (the "U.S. Bank Action") claiming violations of the Fair Debt Collection Practices Act. *See Smith-Scott v. U.S. Bank,* Case No. 1:14-cv-01157-JFM. In response, U.S. Bank filed a counterclaim to foreclose on the property at 10 Stanley Drive. The U.S. District Court appointed a receiver to collect the rental income based on Ms. Smith-Scott's interference with U.S. Bank's rent collection efforts (the "August 26 Order I"). In a separate order, the U.S. District Court ruled that "[Mr. Swallow] acted entirely within his rights and the rights of his client in sending the letter" regarding the collection of rent to Ms. Smith-Scott's tenants (the "August 26 Order II," together with August 26 Order I the "August 26 Orders").

Along with Ms. Smith-Scott's personal bankruptcy petition, filed on September 28, 2014, Ms. Smith-Scott filed a Motion to Use Cash Collateral. Ms. Smith-Scott sought authorization to use the rental income from the three properties for maintenance expenses. In the motion, Ms. Smith-Scott represented to the Bankruptcy Court that she was receiving rental income from all three properties. Ms. Smith-Scott failed to mention the U.S. District Court's August 26 Orders.

Two days later, on September 30, 2014, Ms. Smith-Scott informed the U.S. District Court in the U.S. Bank Action of her bankruptcy filing. That same day, U.S. Bank filed an opposition to Ms. Smith-Scott's Motion to Use Cash Collateral. Ms. Smith-Scott filed a reply, in which she argued that U.S. Bank was not the mortgage holder of the 10 Stanley Drive property because of a defect in the chain of title. This argument was unsupported by any facts and belied by the August 26 Orders. Nevertheless, Ms. Smith-Scott continued to assert this claim throughout her bankruptcy proceedings. The U.S. District Court administratively closed the U.S. Bank Action without prejudice on October 2, 2014.

On October 9, 2014, Patapsco Bank also filed a motion to oppose Ms. Smith Scott's Motion to Use Cash Collateral. The Bankruptcy Court denied Ms. Smith-Scott's motion by order dated October 29, 2014 ("October 29 Order") and barred her from using cash collateral—i.e., rental income—from the Laurel Properties without the consent of Patapsco Bank or the court.

In January 2015, Patapsco Bank filed Motions for Relief from Stay[6] asserting that Ms. Smith-Scott had defaulted on her loans and had failed to file monthly operating reports demonstrating that she had not used the rental income for any unauthorized purpose.[7]  Ms. Smith-Scott filed an opposition to Patapsco Bank's motions on January 30, 2015.  Ms. Smith-Scott provided operating reports for October, November and December 2014 on February 18, 2015.  Bank statements attached to the report showed that Ms. Smith-Scott ignored the October 29 Order and routinely used cash collateral for personal expenses without the permission of the court or Patapsco Bank during the reporting periods.

Patapsco Bank filed a motion on February 24, 2015 to dismiss Ms. Smith-Scott's Chapter 11 case or, alternatively, convert the case to Chapter 7 because of Ms. Smith-Scott's unauthorized use of cash collateral in violation of the October 29 Order.  Ms. Smith-Scott filed an opposition.  On February 25, 2015, Patapsco Bank filed a Motion for Civil Contempt and Sanctions (the "Contempt Motion") against Ms. Smith-Scott for violating

---

[6] In *Hoang v. Lowery*, this Court explained the protections of the automatic stay imposed at the filing of a bankruptcy petition:

> The filing of a petition operates as a stay . . . of actions against the debtor. *See* 11 U.S.C. § 362(a).  The automatic stay applies to several types of actions, including "the commencement or continuation" of an action "to recover a claim against the debtor"; enforcement against the debtor or property of the bankruptcy estate of a judgment obtained pre-filing; and any act to obtain possession of property of the bankruptcy estate or from the estate or to exercise control over the property of the estate.  11 U.S.C. § 362(a)(1)–(3).

___ Md. ___, ___ (2020).

[7] *See* Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. Proc.") 2015(a).

7

the October 29 Order. Ms. Smith-Scott filed an opposition to this motion as well, contending that she did not use cash collateral for any unauthorized purpose. On March 8, 2015, Ms. Smith-Scott filed a Motion for Contempt and Sanctions for Unreasonable and Vexatious Multiplication of Proceedings against Patapsco Bank. Ms. Smith-Scott argued that Patapsco Bank's motions were in bad faith and that Patapsco Bank improperly enlarged its proof of claim. Additionally, Ms. Smith-Scott alleged that she suffered emotional distress from Patapsco Bank's attempts to collect the mortgage payments and sought $5,000 in punitive damages. Later rulings of the Bankruptcy Court confirm that Patapsco Bank's motions were not made in bad faith. Instead, its claims were based on the terms of Ms. Smith-Scott's Deed of Trust.

By order on April 7, 2015, the Bankruptcy Court converted Ms. Smith-Scott's case to a Chapter 7 proceeding ("April 7 Conversion Order") because of Ms. Smith-Scott's (1) violation of the October 29 Order prohibiting the unauthorized use of cash collateral; (2) failure to report on the operations of Strategic Law Group; (3) commingling of personal funds and rental income; and (4) untimely filing of financial reports. In ordering the conversion to a Chapter 7 proceeding, the Bankruptcy Court reasoned as follows:

> I'm very concerned at the various lapses that counsel has—and I say counsel because the debtor is an attorney, who actually is a bankruptcy lawyer, who evidenced today by her lack of knowledge of the Bankruptcy Code, the inability to properly proceed in this case. All of these things cause me to come to the conclusion that not only the creditors, but the debtor would be better off if this case were in a Chapter 7 because she will not then be in charge of the way this case is handled, which has been completely mismanaged from the beginning, to her own detriment, *and to her possible violation of various statutes and criminal laws as well. I don't want to see her get in trouble in this case. And she's going to be in big trouble if we don't stop this now and get somebody in there who knows what he or she is*

8

*doing* . . . . And finally, the violation of a court order and the terms of its use of cash collateral, which she's been prohibited from doing, is the final straw that leads me to conclude that this case must have a Chapter 7 Trustee appointed. The case cannot continue in a Chapter 11, and the debtor has shown quite clearly her unable [sic] to properly manage this case from the very beginning.

(Emphasis and ellipsis in original). Ms. Smith-Scott appealed the April 7 Conversion Order to the U.S. District Court on April 8, 2015. *See Smith-Scott v. Patapsco Bank*, Case No. 1:15-cv-01013-RDB.

Patapsco Bank filed Amended Motions for Relief from the Automatic Stay relating to the Laurel Properties on April 8, 2015. Ms. Smith-Scott filed an opposition. The Bankruptcy Court heard arguments on June 18, 2015. Four days later, the court granted Patapsco Bank's motions (the "June 22 Order"). The June 22 Order granted Patapsco Bank relief from the automatic stay, allowed it to foreclose on the Laurel Properties, and collect the rents.

Meanwhile, the Bankruptcy Court appointed George W. Liebmann, Esq. ("Trustee") as the United States Chapter 7 Trustee to oversee Ms. Smith-Scott's bankruptcy case. The Trustee filed an Application to employ his law partner, Orbie R. Shively, Esq. ("Mr. Shively") as his attorney in his capacity as the Trustee. On May 11, 2015, during a conversation between Ms. Smith-Scott and Mr. Shively, Ms. Smith-Scott indicated her intent to move forward with the U.S. Bank Action, even though the case had been administratively closed by the U.S. District Court. Mr. Shively advised Ms. Smith-Scott that the U.S. Bank Action was property of the bankruptcy estate. As such, the lawsuit was within the exclusive control of the Trustee. Mr. Shively further explained that only the

9

Trustee could proceed in the U.S. Bank Action—not Ms. Smith-Scott—and he requested that Ms. Smith-Scott provide him with relevant filings in the case. Ms. Smith-Scott failed to comply with Mr. Shively's request.

During the same conversation, Ms. Smith-Scott requested a postponement of her § 341 meeting of creditors,[8] which was originally scheduled for May 12, 2015. Mr. Shively consented, and postponed the meeting until May 26, 2015. However, Ms. Smith-Scott never appeared for the rescheduled meeting. Yet, on May 26, 2015, Ms. Smith-Scott emailed Mr. Shively and again informed him of her intent to proceed in the U.S. Bank Action. On May 27, 2015, Mr. Shively responded by email and reminded Ms. Smith-Scott that the Trustee exclusively controlled the U.S. Bank Action and she had no right to proceed in the case.

Notwithstanding Mr. Shively's warnings, Ms. Smith-Scott filed three motions in the U.S. Bank Action on June 15, 2015: (1) Motion to Reopen Case; (2) Motion to Vacate Order Granting Receivership; and (3) Motion for Leave to File Amended Complaint to Add Party and Due to New Evidence. However, because of the Trustee's appointment, Ms. Smith-Scott lacked standing to file these motions. Additionally, Ms. Smith-Scott failed to serve the Trustee or Mr. Shively with copies or notice of the filings. On June 17, 2015, the Trustee filed a Motion and Notice of Substitution of Trustee arguing that the Trustee was the real party in interest and that Ms. Smith-Scott lacked standing to proceed

---

[8] 11 U.S.C. § 341 requires that the Trustee "convene and preside at a meeting of creditors" in the debtor's case. The debtor's attendance is required. *See* 11 U.S.C. § 343(a) ("The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title.").

10

in the case. Ms. Smith-Scott filed an opposition on July 1, 2015, arguing, without support, that the Trustee's motion was not ripe because the April 7 Conversion Order was pending on appeal. The Trustee filed a reply.

The U.S. District Court denied Ms. Smith-Scott's motions on June 17, 2015. Ms. Smith-Scott noted an appeal of the U.S. District Court's order to the United States Court of Appeals for the Fourth Circuit. In response, the Trustee filed a Line Withdrawing with Prejudice Notice of Appeal. Ms. Smith-Scott filed an opposition to the Trustee's line withdrawing the appeal on July 20, 2015. The U.S. District Court granted the Trustee's Motion and Notice of Substitution on August 5, 2015. Ms. Smith-Scott filed a second appeal to the U.S. Court of Appeals for the Fourth Circuit. The appellate court consolidated the two appeals and, on November 5, 2015, dismissed the case on joint stipulation between the Trustee and U.S. Bank.

Meanwhile, pursuant to the June 22 Order, Patapsco Bank sent letters to Ms. Smith-Scott's tenants directing them to send rent payments directly to Patapsco Bank. Patapsco Bank copied Ms. Smith-Scott on each letter. On July 13, 2015, Ms. Smith-Scott sent letters to her tenants acknowledging that Patapsco Bank had the right to collect the rents; however, she informed the tenants that she would be unable to maintain the properties without rental income. Ms. Smith-Scott instructed the tenants to remit their rent payments directly to her. On July 18, 2015, Patapsco Bank filed a Motion for Civil Contempt and Sanctions noting Ms. Smith-Scott's efforts to obstruct Patapsco Bank's rent collection. Patapsco Bank asserted that Ms. Smith-Scott continued to use rent payments in violation of the October 29 Order. Ms. Smith-Scott filed an opposition on July 20, 2015.

11

Patapsco Bank sent a second letter to Ms. Smith-Scott's tenants on July 31, 2015, directing them to remit their rental payments to a property management company, Summerfield Investment Group, LLC. On August 3, 2015, Ms. Smith-Scott sent another letter to the tenants falsely stating that Patapsco Bank did not have a court order to collect the rent; again, she directed the tenants to remit the rent payments directly to her. Ms. Smith-Scott directed the tenants to call 9-1-1 if any person came to the properties to collect the rents. Patapsco Bank filed a supplement to its earlier Motion for Civil Contempt and Sanctions on August 6, 2015.

Ms. Smith-Scott, without authorization from the Bankruptcy Court or the Trustee, filed a lawsuit against Patapsco Bank ("Patapsco Bank Action") in the Circuit Court for Prince George's County on August 14, 2015. *See Smith-Scott v. Patapsco Bank,* Case No. CAL15-20704. Because Ms. Smith-Scott's complaint related to allegations and events occurring prior to the filing of her bankruptcy petition, the Patapsco Bank Action became a part of the bankruptcy estate; therefore, it fell under the exclusive control of the Trustee. The Trustee filed a Motion to Intervene as the real party in interest on November 25, 2015. The circuit court granted the Trustee's motion, and the Trustee and Patapsco Bank settled the matter by stipulation.

On August 31, 2015, Ms. Smith-Scott filed a Motion to Alter or Amend the April 7 Conversion Order and the June 22 Order permitting Patapsco Bank to foreclose.[9] Howard Bank, successor-in-interest to Patapsco Bank, filed an opposition on September 14, 2015.

In response to Ms. Smith-Scott's failure to attend the rescheduled § 341 meeting of creditors, the Trustee filed, on September 2, 2015, a Motion for Order Compelling Debtor to Attend Rescheduled Meeting of Creditors. The Trustee requested that the court compel Ms. Smith-Scott's attendance at another rescheduled meeting set for October 22, 2015. Ms. Smith-Scott filed a response on September 21, 2015, in which she alleged her case should not have been converted to Chapter 7 and that U.S. Bank did not hold the mortgage for 10 Stanley Drive based on a defect in the chain of title.[10] Her response did not address the Trustee's request to compel her presence at the October 22 meeting of creditors. The Bankruptcy Court granted the Trustee's motion on September 24, 2015 ("September 24 Order") and ordered Ms. Smith-Scott's attendance at the October 22 meeting. Nevertheless, Ms. Smith-Scott failed to appear. Indeed, after the April 7 Conversion Order, Ms. Smith-Scott refused to attend any of the required meetings of creditors.

On September 29, 2015, on the Trustee's motion, the Bankruptcy Court entered an order ("September 29 Order") compelling Ms. Smith-Scott to turn over the following to the Trustee within ten days: (1) copies of all leases identified on Schedules E and G of the

---

[9] The hearing judge's findings of fact indicate a "June 23" order, but the circuit court entered its order permitting Patapsco Bank to foreclose on June 22, 2015—i.e., the June 22 Order.

[10] Ms. Smith-Scott continued to assert this second argument despite the U.S. District Court's ruling to the contrary. *See supra* at 6.

13

bankruptcy petition;[11] (2) bank records showing the accounts where each of the tenants' security deposits were deposited and subsequent bank statements to the present; (3) the tenants' security deposits plus 3% interest; (4) the records showing each client of Strategic Law Group, amount and dates of legal services rendered constituting the pre-petition accounts receivable; (5) accounting, plus bank records, showing all of Ms. Smith-Scott's collection or other receipts of pre-petition accounts receivable from September 28, 2014 to April 7, 2015; (6) accounting, plus bank records, showing all of Ms. Smith-Scott's collection or other receipts of pre-petition accounts receivable from April 7, 2015 to the present; (7) copies of Ms. Smith-Scott's 2013 federal and Maryland income tax returns; (8) copies of the 2014 federal and Maryland income tax returns; and (9) the pro rata portion (74%) of the total amount in 2014 tax refunds. Ms. Smith-Scott provided her residential

---

[11] "Schedules" in a bankruptcy petition indicate all assets, liabilities, and other information about a debtor for an accounting of what will become the bankruptcy estate. In 2015, at the time Ms. Smith-Scott filed her petition, Schedule E required debtors to list "Creditors Holding Unsecured Priority Claims," and Schedule G required debtors to list "Executory Contracts and Unexpired Leases." *See* Administrative Office of the U.S. Courts, *Schedule E - Creditors Holding Unsecured Priority Claims (Superseded)*, https://www.uscourts.gov/forms/bankruptcy-forms/schedule-e-creditors-holding-unsecured-priority-claims (last visited June 26, 2020) archived at https://perma.cc/4QSF-VPSX; Administrative Office of the U.S. Courts, *Schedule G - Executory Contracts and Unexpired Leases (Superseded),* https://www.uscourts.gov/forms/bankruptcy-forms/schedule-g-executory-contracts-and-unexpired-leases (last visited June 26, 2020) archived at https://perma.cc/Y8EY-X29M. Schedule E/F ("Creditors Who Have Unsecured Claims") replaced the superseded Schedules E and G on December 1, 2015. *See* Administrative Office of the U.S. Courts, *Schedule E/F: Creditors Who Have Unsecured Claims (Individuals)*, https://www.uscourts.gov/forms/individual-debtors/schedule-ef-creditors-who-have-unsecured-claims-individuals (last visited June 26, 2020) archived at https://perma.cc/LFN8-ZWPU.

leases and 2013 tax returns, but failed to turn over the remaining documentation ordered by the Bankruptcy Court.

On October 1, 2015, the Trustee filed a Motion for Sale of 10 Stanley Drive Free and Clear of Liens and Encumbrances. Ms. Smith-Scott filed an opposition and, again, asserted that U.S. Bank did not hold the mortgage for 10 Stanley Drive. The Trustee's reply contended that Ms. Smith-Scott lacked standing to oppose the sale because the property had no equity and Ms. Smith-Scott was insolvent. The Bankruptcy Court heard arguments on November 5, 2015. Before the hearing, the Trustee explained to Ms. Smith-Scott that she did not have standing to oppose the sale and that Ms. Smith-Scott's accusations of fraud on the part of U.S. Bank were irrelevant to the validity of the mortgage. During the hearing, the Bankruptcy Court advised Ms. Smith-Scott that she lacked standing to challenge the sale of 10 Stanley Drive. The Bankruptcy Court granted the Trustee's motion on November 6, 2015 ("November 6 Order").

Meanwhile, the U.S. District Court affirmed the Bankruptcy Court's April 7 Conversion Order on October 8, 2015. *See Smith-Scott v. Patapsco Bank,* Case No. 1:15-cv-01013-RDB. The U.S. District Court's written opinion noted that, "the record in this case is replete with cause for conversion" and the Bankruptcy Court's "findings of fact were not clearly erroneous." The U.S. District Court continued, "the evidence in this case clearly supports [the bankruptcy court's] findings that [Ms.] Smith-Scott is not competent to administer her case." (First alteration in original). That same day, Ms. Smith-Scott filed an Amended Motion to Alter or Amend the Bankruptcy Court's April 7 Conversion Order—the very order the U.S. District Court affirmed on appeal. Again, Ms. Smith-Scott

15

reiterated the same argument that U.S. Bank did not hold the mortgage for 10 Stanley Drive. The Bankruptcy Court denied the motion on November 6, 2015 ("November 6 Denial").

On November 6, 2015, Ms. Smith-Scott appealed the Bankruptcy Court's November 6 Order and November 6 Denial to the U.S. District Court. *See Smith-Scott v. Howard Bank, et al.*, Case No. 1:15-cv-03423-RDB. During the pendency of the appeal, on November 17, 2015, Ms. Smith-Scott filed a Motion to Reconsider November 6 Order. On November 23, 2015, on the Trustee's motion, the Bankruptcy Court struck Ms. Smith-Scott's motion ("November 23 Order") because it concerned "the same Order that [Ms. Smith-Scott] previously appealed to the United States District Court."

On November 17, 2015, the Trustee filed a Motion to Dismiss Appeal in the U.S. District Court. *See* Case No. 1:15-cv-03423-RDB. Ms. Smith-Scott filed an opposition. The U.S. District Court granted the Trustee's motion on March 18, 2016, affirmed the April 7 Conversion Order, and affirmed the November 6 Denial. In its memorandum opinion, the U.S. District Court found that Ms. Smith-Scott lacked standing to challenge the sale of 10 Stanley Drive, and that "there [] remains substantial evidence supporting the issuance of the [April 7] Conversion Order and [the Bankruptcy Court's] decision to uphold it." (Alteration in original). On March 22, 2016, Ms. Smith-Scott filed an appeal to the U.S. Court of Appeals for the Fourth Circuit. The appellate court affirmed the U.S. District Court's ruling in part and dismissed the appeal in part on August 8, 2016.

On November 22, 2015, Ms. Smith-Scott filed a Motion to Remove Chapter 7 Trustee for Cause. Ms. Smith-Scott alleged that the Trustee neglected his duties by

16

declining to investigate Ms. Smith-Scott's claims against U.S. Bank and that the Trustee "purposely and knowingly conceal[ed] fraud" on the part of U.S. Bank. On November 25, 2015, before the Trustee could respond, the Bankruptcy Court denied the motion ("November 25 Order") stating, "the motion has no merit whatsoever. No hearing is required." That same day, Ms. Smith-Scott filed an appeal of the Bankruptcy Court's November 23 Order and November 25 Order. *See Smith-Scott v. Liebmann*, Case No. 1:15-cv-03637-RDB. The Trustee filed a Motion to Dismiss on February 3, 2016. Ms. Smith-Scott did not file an opposition.

The U.S. District Court entered an order on March 18, 2016 dismissing the appeal and affirming the November 25 Order. In its memorandum opinion, the U.S. District Court determined that the November 25 Order was not a final appealable order; therefore, it was not properly before the U.S. District Court and required dismissal. The U.S. District Court further concluded that Ms. Smith-Scott's appeal of the Bankruptcy Court's November 6 Order divested the Bankruptcy Court of jurisdiction to adjudicate her November 17 Motion to Reconsider. Ultimately, the U.S. District Court held that, "[w]ithout jurisdiction over the issue, [the Bankruptcy Court] properly struck [Ms. Smith-Scott's] Motion to Reconsider." (First and second alterations in original).

The Trustee filed a Motion for Approval of Settlement and Compromise with Howard Bank on November 25, 2015. Ms. Smith-Scott did not file an opposition. The Bankruptcy Court granted the Trustee's motion on January 4, 2016 ("January 4 Order"). Ms. Smith-Scott filed a Motion to Alter or Amend the January 4 Order on April 25, 2016. The Trustee filed an opposition. On September 26, 2016, the Bankruptcy Court denied

17

Ms. Smith-Scott's motion, explaining that Ms. Smith-Scott failed to meet "the initial threshold for consideration [of the motion] pursuant to [Federal Rule of Civil Procedure] Rule 60(b)." (Alteration in original).

On December 21, 2015, the Bankruptcy Court found Ms. Smith-Scott in civil contempt for violating its October 29 Order, which prohibited Ms. Smith-Scott from using cash collateral. In response, Ms. Smith-Scott filed a Motion to Recuse Judge Schneider on January 5, 2016, contending that Judge Schneider was partial and biased against her. The Trustee and United States Trustee—who had not participated in the case until this point—filed oppositions. Ms. Smith-Scott filed on May 16, 2016 a supplement to her Motion to Recuse.

The Bankruptcy Court issued an order on March 22, 2016 requiring Ms. Smith-Scott and Strategic Law Group to vacate the Laurel Properties on or before April 1, 2016 ("March 22 Order"). Ms. Smith Scott defied the March 22 Order and refused to vacate 367 Main Street. On April 12, 2016, Mr. Shively went to the Laurel Properties with a locksmith to change the locks. There, Mr. Shively encountered two Strategic Law Group employees; he informed them that they needed to vacate the property immediately. One employee called Ms. Smith-Scott, who instructed the employees to stay in the office despite Mr. Shively's instructions. Mr. Shively then told the employees that they had three days to vacate the property. Later that month, without notice or authorization from the Trustee, Ms. Smith-Scott changed the locks to her law office.

On April 13, 2016, Ms. Smith-Scott, on behalf of Strategic Law Group, filed an "Emergency Injunctive Relief as to and [sic] Motion to Alter and/or Amend Order dated

18

March 24, 2016." Ms. Smith-Scott argued that the court did not have jurisdiction over Strategic Law Group and could not force it to vacate 367 Main Street. The Trustee countered that the ownership of Strategic Law Group is an asset of the bankruptcy estate and the law firm had not paid rent in over a year to the detriment of the estate and the secured party.

On April 19, 2016, as a result of Ms. Smith-Scott's failure to vacate 367 Main Street in violation of the March 22 Order, the Trustee filed a Motion for Civil Contempt and Sanctions. Ms. Smith-Scott filed an opposition on May 5, 2016. Ms. Smith-Scott accused Mr. Shively of engaging in criminal conduct in an effort to secure possession of 367 Main Street. On April 25, 2016, Ms. Smith-Scott filed a second Motion to Remove Chapter 7 Trustee. Both the Trustee and the U.S. Trustee filed oppositions.

The Bankruptcy Court held a hearing on May 16, 2016 where it found Ms. Smith-Scott in civil contempt of its March 22 Order and warned Ms. Smith-Scott that continued contempt may result in her incarceration (the "May 16 Contempt Order"). The Bankruptcy Court ordered that Ms. Smith-Scott pay the Trustee, within ten days, the following: $612 in locksmith costs and $100 per day from April 1, 2016 until she vacated 367 Main Street. Ms. Smith-Scott did not pay the sanctions. Further, despite the contempt finding, Ms. Smith-Scott refused to vacate 367 Main Street. On May 19, 2016, the Trustee filed a Notice of Non-Compliance alerting the Bankruptcy Court of Ms. Smith-Scott's continued refusal to comply with the March 22 Order.

Ms. Smith-Scott noted an appeal of the May 16 Contempt Order to the U.S. District Court on May 20, 2016. *See Smith-Scott v. Howard Bank, et al.*, 1:16-cv-01572-RDB. In

her brief, Ms. Smith-Scott accused Mr. Shively of committing perjury during the May 16 hearing, alleged the Bankruptcy Court was violating her Eighth Amendment right against cruel and unusual punishment by threatening incarceration, alleged a number of constitutional violations, and argued that "the Trial Court abused its discretion by failing to rule on [Ms. Smith-Scott's] Motion to Recuse while allowing perjury and mortgage fraud to take place which would lead an objective observer to question the judge's impartiality."

On September 20, 2016, the U.S. District Court affirmed the May 16 Contempt Order and dismissed Ms. Smith-Scott's appeal. The U.S. District Court's opinion rejected all of Ms. Smith-Scott's arguments and held that Ms. Smith-Scott, "cites no facts which would support her [perjury] contentions but appears to rely upon the sheer audacity of her allegations" and that her allegations are "contradicted by signed submissions to the Court by counsel for [the Trustee.]" Concerning the Eighth Amendment challenge, the U.S. District Court held "[t]o be clear: [Ms. Smith-Scott] has not been incarcerated in conjunction with this case, and her Brief does not allege that she was . . . . [Ms. Smith-Scott's] claim that her Eighth Amendment rights have been violated is premature." (Ellipsis in original). On the judicial recusal challenge, the U.S. District Court held that Ms. Smith-Scott "cites no action or conflict which would warrant judicial disqualification—indeed, she alleges no facts involving Judge Schneider at all—but, again, relies only upon the audacity of her allegations."

As of June 8, 2016, Ms. Smith-Scott still refused to vacate 367 Main Street, causing the Trustee to file a Second Notice of Non-Compliance with Contempt Order. On June 20,

20

2016, the U.S. Trustee filed an Adversary Complaint against Ms. Smith-Scott. The U.S. Trustee requested an order denying discharge of Ms. Smith-Scott's debts on the grounds that she (1) refused to comply with the court's September 24 Order; (2) transferred and concealed estate property, i.e., the Patapsco Bank rents; (3) refused to comply with the court's September 29 Order; (4) refused to comply with the court's March 22 Order, and (5) intended to delay the Trustee's administration of the estate by filing the Patapsco Bank Action.

The Trustee filed a Motion to Sell 511 Main Street free and clear of liens and encumbrances on June 17, 2016. Ms. Smith-Scott filed an opposition. On July 22, 2016, the Bankruptcy Court granted the Trustee's motion. By June 27, 2016, Ms. Smith-Scott still refused to vacate 367 Main Street, causing the Trustee to file a Third Notice of Non-Compliance with Turnover Order and with Contempt Order.

On July 8, 2016, Ms. Smith-Scott filed a complaint in the U.S. District Court against the Trustee, Mr. Shively, and their law firm, Liebmann and Shively, P.A. (collectively, "Defendants"). The case was ultimately transferred to the Bankruptcy Court. In her complaint, Ms. Smith-Scott alleged that during the May 16 contempt hearing, Mr. Shively made four "negligent and willful misrepresentations" to the Bankruptcy Court intending to obtain a favorable ruling. She sought relief in the form of punitive damages in the amount of "$10,000 for each statement and from each Defendant." Additionally, Ms. Smith-Scott falsely alleged that the Trustee engaged in unlawful entry and trespass when he changed the locks to her law office on April 12, 2016. Ms. Smith-Scott sought further damages in the amount of $215 to "re-key the lock" to her law office and punitive damages in the

21

amount of "$10,000 from each Defendant." Ms. Smith-Scott's complaint included several other unsubstantiated charges against the Trustee, Mr. Shively, and their law firm. The Defendants filed a Motion to Dismiss on July 27, 2016. Ms. Smith-Scott failed to respond; therefore, the U.S. District Court dismissed the complaint with prejudice on September 15, 2016.

Also on July 8, 2016, Ms. Smith-Scott filed a Motion to Withdraw Bankruptcy Case to the U.S. District Court requesting the U.S. District Court to take complete jurisdiction over her bankruptcy case. Ms. Smith-Scott claimed that she had "proven that the Chapter 7 Trustee has perjured himself in the United States Bankruptcy Court" and has "breached [his] fiduciary duty to the unsecured creditors." (Alteration in original). Ms. Smith-Scott made several arguments that her constitutional rights had been violated. On July 22, 2016, the Trustee filed an opposition. On September 29, 2017, the U.S. District Court denied the motion, noting that Ms. Smith-Scott moved to withdraw her case "a full twenty-one months after she voluntarily commenced the case in the bankruptcy court . . . where there were over 400 docket entries in the case, including three unsuccessful appeals to the District Court." (Ellipsis in original). The U.S. District Court held that Ms. Smith-Scott's motion "could be denied on timeliness grounds alone," that her complaint was "devoid of claims premised on other federal laws," and that the motion "appears to be an attempt by [Ms. Smith-Scott] to find a more favorable forum for her claims."

As of July 19, 2016, Ms. Smith-Scott still refused to vacate 367 Main Street, causing the Trustee to file a Fourth Notice of Non-Compliance with Turnover Order and with Contempt Order. On July 22, 2016, the Bankruptcy Court entered an order on its own

accord ("July 22 Order") directing the U.S. Marshal to assist the Trustee in securing the property. The Bankruptcy Court's order found:

> [Ms.] Smith-Scott, the debtor and a member of the bar of this Court, has failed and refused to comply with the lawful orders of this Court. It is apparent from the Trustee's motion, notices of non-compliance and the record that the debtor is willfully disregarding court orders and refusing to allow the Trustee to undertake his statutory function to administer the assets of the estate.

Ms. Smith-Scott, that same day, noted an appeal of the July 22 Order to the U.S. District Court directing the U.S. Marshal to assist the Trustee and the order approving the sale of 511 Main Street. *See Smith-Scott v. Liebmann*, Case No. 1:16-cv-02658-GLR. Ms. Smith-Scott failed to file an appellate brief; therefore, the U.S. District Court dismissed the appeal on December 27, 2016.

On August 11, 2016, the Bankruptcy Court entered an order denying Ms. Smith-Scott's Motion to Recuse Judge ("August 11 Order") and held, "the debtor's allegations of bias are nothing more than 'unsupported, irrational, or highly tenuous speculation'" and that "her dissatisfaction with the results obtained in the instant case does not entitle her to a change of judge." The Bankruptcy Court entered another order on September 1, 2016, denying Ms. Smith-Scott's second Motion to Remove Trustee ("September 1 Order") and remarked, "the debtor has opposed every action by the Chapter 7 Trustee to administer this case. . . [t]he instant motion to remove the Trustee is without merit." (Ellipsis and alterations in original). On September 6, 2016, Ms. Smith-Scott noted an appeal to the U.S. District Court of the August 11 Order and September 1 Order. Ms. Smith-Scott failed

23

to file the requisite appellate pleadings. On August 15, 2017, on the Trustee's motion, the U.S. District Court dismissed the appeal.

After the issuance of these orders, Mr. Shively, with the assistance of three Deputy U.S. Marshals, went to 367 Main Street to secure possession. The Strategic Law Group employees Mr. Shively encountered on April 12 were present at the office. After making a phone call, the employees refused to vacate the premises. The U.S. Marshals advised the employees that they would be handcuffed; ultimately, the employees vacated the property. U.S. Marshals and the property manager packed the contents of Ms. Smith-Scott's law office and moved the packed boxes to a parking lot behind the building. Shortly thereafter, Ms. Smith-Scott arrived with a moving truck. Mr. Shively observed Ms. Smith-Scott load all the items from the parking lot into the moving truck and drive away.

On January 23, 2017, the Bankruptcy Court entered summary judgment in favor of the U.S. Trustee in the Adversary Proceeding and found that "the Debtor in this case, did willfully disobey lawful Orders of this Court." The Bankruptcy Court further entered a judgment denying Ms. Smith-Scott's discharge ("Denial of Discharge Order"). On January 30, 2017, Ms. Smith-Scott again appealed the Denial of Discharge Order to the U.S. District Court. *See Smith-Scott v. U.S. Trustee*, Case No. 17-cv-00267-ELH. The U.S. District Court affirmed the Denial of Discharge Order on January 25, 2018. Ms. Smith-Scott filed an appeal to the U.S. Court of Appeals for the Fourth Circuit.

The Trustee filed a Motion of Sale of 367 Main Street on April 11, 2017 and an amendment thereto on April 26, 2017. Ms. Smith-Scott filed an opposition. On June 11, 2017 the Bankruptcy Court approved the Trustee's sale of 367 Main Street ("June 11

24

Order"). On June 27, 2017, Ms. Smith-Scott filed an untimely appeal to the U.S. District Court of the June 11 Order. On August 22, 2017, on the Trustee's motion, the U.S. District Court dismissed the appeal due its untimeliness and Ms. Smith-Scott's failure to file the required appellate pleadings.

The U.S. Trustee approved the Trustee's final accounting and final notice was sent to all parties on August 31, 2017.

*Bar Counsel Investigation I*

Bar Counsel wrote to Ms. Smith-Scott on September 23, 2016 and requested an explanation by October 14, 2016 for her failure to comply with the Bankruptcy Court's March 22 Order. Ms. Smith-Scott failed to respond to Bar Counsel in any manner. On October 18, 2016, Bar Counsel again wrote to Ms. Smith-Scott and requested a response to its September 23 letter within ten days. Ms. Smith-Scott informed Bar Counsel on November 4, 2016, by telephone, that she would hand-deliver a response on November 7, 2016. Ms. Smith-Scott failed to do so.

Bar Counsel notified Ms. Smith-Scott on December 6, 2016 that the matter had been docketed for further investigation and requested a response to the September 23 and October 18 letters by December 21, 2016. Ms. Smith-Scott submitted a response to Bar Counsel on January 17, 2017, wherein she knowingly and intentionally misrepresented the following: "The Chapter 7 Trustee began to sale [sic] property by omitting facts and misrepresenting other facts, which caused the Bankruptcy Judge to rule in [the Chapter 7 Trustee's] favor which included an order of contempt and being threatened with

25

incarceration." Ms. Smith-Scott provided no other explanation for the Bankruptcy Court's contempt finding or her refusal to comply with the March 22 Order.

*Representation of Crystal Combs*

Ms. Crystal Combs retained Ms. Smith-Scott and Strategic Law Group in October 2015. Ms. Combs sought to remove her ex-husband's name from the deed to her home ("2603 Vicarage Court"). At that time, Bank of America held the mortgage to the home, which was in default. However, Bank of America offered Ms. Combs a loan modification on the condition that Ms. Combs' ex-husband—since his name remained on the deed—either become a party to the modification or his name be removed from the deed.

Ms. Combs agreed to pay Ms. Smith-Scott on an hourly basis, at the rate of $225 per hour. On October 14, 2015, Ms. Combs paid Ms. Smith-Scott $2,500 for the representation. Of that, $1,000 was for legal services Ms. Smith-Scott had already provided. The remaining $1,500 constituted a retainer against which Ms. Smith-Scott would bill future legal services. Ms. Combs paid Ms. Smith-Scott by credit card; Ms. Smith-Scott entered the credit card number in Square and charged the card.[12] Ms. Smith-Scott failed to deposit and maintain the funds in an attorney trust account until earned for fees or used for expenses. Ms. Smith-Scott failed to obtain Ms. Combs' informed consent in writing to deposit the funds in an account other than an attorney trust account.

On May 19, 2016, at Ms. Smith-Scott's request, Ms. Combs' paid an additional $1,850 towards the representation by credit card. Therefore, by May 18, 2016, Ms. Combs

---

[12] "Square" is a credit card processing service.

26

had paid Ms. Smith-Scott a total of $4,350. However, at no time during the representation of Ms. Combs did Ms. Smith-Scott provide an invoice reflecting how such fees were incurred. Ms. Smith-Scott successfully removed Ms. Combs' ex-husband from the 2603 Vicarage Court deed and Ms. Combs successfully completed her Bank of America loan modification.

At the time Ms. Combs retained Ms. Smith-Scott, Ms. Combs also owned an investment property ("9904 Doubletree Lane"). Ms. Combs was defending a foreclosure action against this property in the Circuit Court for Prince George's County. *See Brown, et al. v. Combs*, Case No. CAE10-20522. On August 9, 2016, the circuit court entered an order permitting the secured creditor to proceed with the foreclosure ("Foreclosure Order"). On August 12, 2016, Ms. Combs retained Ms. Smith-Scott to represent her in the foreclosure action. That same day, Ms. Smith-Scott entered her appearance and filed an Emergency Motion to Reconsider the Foreclosure Order. The secured creditor scheduled a foreclosure sale for September 13, 2016.

On August 26, 2016, prior to the circuit court's adjudication of the Emergency Motion to Reconsider, Ms. Smith-Scott appealed the Foreclosure Order to the Court of Special Appeals. Ms. Smith-Scott explained to Ms. Combs that an appeal of the Foreclosure Order would delay the foreclosure. With the Notice of Appeal, Ms. Smith-Scott filed in the circuit court a Motion to Stay the proceeding pending appeal. On September 7, 2016, Ms. Smith-Scott filed an unsigned Civil Appeal Information Report in the Court of Special Appeals. On September 21, 2016, the Clerk of the Court of Special Appeals requested Ms. Smith-Scott provide a signed copy of the report. Ms. Smith-Scott

failed to respond and otherwise failed to pursue Ms. Combs' appeal in any manner. The Court of Special Appeals dismissed the appeal on November 15, 2016.

Ms. Combs agreed to pay Ms. Smith-Scott on an hourly basis for her representation in the circuit court and Court of Special Appeals. On August 15, 2016, Ms. Combs paid Ms. Smith-Scott $1,000 by credit card. Ms. Combs paid another $500 by credit card on August 25, 2016. Ms. Combs provided Ms. Smith-Scott with the credit card number either over the phone or in person. Ms. Smith-Scott and Ms. Combs did not execute a written retainer agreement for the representation. At no point throughout the representation or at its conclusion did Ms. Smith-Scott provide Ms. Combs with an invoice reflecting the legal fees that Ms. Combs incurred.

In early September 2016, with the September 13, 2016 foreclosure sale looming, Ms. Combs elected to file for bankruptcy. On September 12, 2016, Ms. Combs retained Ms. Smith-Scott to represent her in the bankruptcy proceedings and agreed to pay a flat fee of $4,200 for the representation. That same day, Ms. Combs met with Ms. Smith-Scott and made an initial payment of $1,500 by credit card. Ms. Smith-Scott advised Ms. Combs that once Ms. Combs paid the bankruptcy filing fee, which she agreed to pay in four monthly installments of $75 dollars, Ms. Combs could pay the remainder of Ms. Smith-Scott's legal fee. Ms. Combs paid the $300 bankruptcy filing fee. On September 12, 2016, Ms. Smith-Scott filed a Voluntary Chapter 13 Petition in the Bankruptcy Court on behalf of Ms. Combs. *See In re: Crystal A. Combs*, Case No. 16-22230. That same day, Ms. Smith-Scott filed a Disclosure of Compensation of Attorney for Debtor, which disclosed the fee arrangement Ms. Smith-Scott reached with Ms. Combs.

On October 7, 2016, the secured creditor for 9904 Doubletree Lane moved for relief from the automatic stay. On October 17, 2016, Ms. Smith-Scott filed an opposition to the motion and the Bankruptcy Court scheduled a hearing for November 3, 2016. Prior to the hearing date, Ms. Smith-Scott misinformed Ms. Combs that the hearing had been rescheduled and that she need not appear on November 3. However, the hearing had not been rescheduled. The Bankruptcy Court held the November 3 hearing and neither Ms. Smith-Scott nor Ms. Combs appeared.

The Bankruptcy Court granted the secured creditor's motion to lift the automatic stay on November 10, 2016. The Bankruptcy Court entered the order on November 14, 2016, permitting the secured creditor to proceed with foreclosure proceedings. Ms. Combs received a copy of the Bankruptcy Court's order and immediately requested Ms. Smith-Scott file a Motion for Reconsideration. Ms. Smith-Scott agreed to file the motion. Before December 12, 2016, Ms. Smith-Scott represented to Ms. Combs that she had filed the Motion for Reconsideration when she had not. On December 12, 2016, believing Ms. Smith-Scott filed the motion, Ms. Combs emailed Ms. Smith-Scott and inquired whether the court had issued a ruling. On December 28, 2016—six weeks after the Bankruptcy Court lifted the automatic stay—Ms. Smith-Scott filed an untimely Emergency Motion for Reconsideration. Ms. Smith-Scott filed an Amended Emergency Motion on January 4, 2017.

On January 9, 2017, the Bankruptcy Court denied Ms. Smith-Scott's Amended Emergency Motion ("January 9 Order"). Respondent then filed an appeal of the January 9 Order to the U.S. District Court. Yet, before Ms. Smith-Scott could complete any

substantive work, Ms. Combs elected to dismiss the appeal. On January 17, 2017, 9904 Doubletree Lane sold at a foreclosure sale. On February 1, 2017, the secured creditor filed a Report of Sale in the circuit court foreclosure action. On February 2, 2017, Ms. Smith-Scott filed Exceptions to the Foreclosure Sale.

Ms. Combs met with Ms. Smith-Scott at her law office on February 2, 2017. At Ms. Smith-Scott's request, Ms. Combs paid $2,500 toward the $4,200 flat fee for the bankruptcy representation by credit card. Therefore, by February 2, Ms. Combs had paid $4,000 of the agreed upon $4,200 flat fee. Bankruptcy Rule 2016(b) obligated Ms. Smith-Scott to inform the Bankruptcy Court of her receipt of additional legal fees, yet she failed to do so. At the February 2 meeting, Ms. Smith-Scott presented Ms. Combs with an invoice for services purportedly rendered. Ms. Combs reviewed the invoice and noticed inaccuracies. Ms. Combs requested Ms. Smith-Scott send a corrected invoice via email. Ms. Smith-Scott failed to do so.

In February 2017, Ms. Combs and Ms. Smith-Scott began to disagree about the most effective legal strategy to reclaim 9904 Doubletree Lane. Ms. Combs acquired sufficient funds to reclaim the property and asked Ms. Smith-Scott to request permission from the circuit court to deposit the funds in the court's escrow account. Ms. Combs expressed a desire to make the request promptly—i.e., before the circuit court ratified the foreclosure sale. In an email on February 18, 2017, Ms. Combs memorialized her request and suggested that Ms. Smith-Scott withdraw her appearance in the foreclosure action if she declined to take the requested action. That same day, Ms. Smith-Scott notified Ms. Combs

30

by email that she would be withdrawing her appearance in both the foreclosure and bankruptcy actions.

On February 21, 2017, unsure whether Ms. Smith-Scott continued to represent her, Ms. Combs emailed Ms. Smith-Scott and alerted her to filing deadlines in the pending bankruptcy appeal and a scheduled hearing in Bankruptcy Court. Ms. Smith-Scott agreed to attend the hearing and stated to Ms. Combs, "I will need to be paid and I am withdrawing from both cases." Ms. Combs did not know how much she owed Ms. Smith-Scott because she never received a revised invoice. Ms. Combs sent Ms. Smith-Scott a second email on February 21 and requested that she dismiss the bankruptcy case and withdraw her appearance in the foreclosure action. On February 22, 2017, Ms. Smith-Scott filed a Motion to Dismiss Voluntary Chapter 13 Case in the bankruptcy action. The next day the Bankruptcy Court dismissed and closed Ms. Combs' bankruptcy action. On February 23, 2017, Ms. Smith-Scott filed a Line striking her appearance in Ms. Combs' foreclosure action.

On February 22, 2017, Ms. Smith-Scott emailed Ms. Combs two invoices. The invoices showed that Ms. Combs owed Ms. Smith-Scott a total of $4,986.13. Ms. Smith-Scott's email further informed Ms. Combs that she had an outstanding balance of $1,686.13 and an additional $3,300 in legal fees had accrued. The first invoice, labeled "Invoice #23," was dated February 1, 2017 and contained twenty-six entries. Most of the entries pertained to Ms. Smith-Scott's work on the bankruptcy action, for which Ms. Smith-Scott had already been paid $4,000 of the $4,200 total fee. Invoice #23 incorrectly reflected that on February 1, 2017, Ms. Combs paid (1) $216.25 toward the balance; and (2) $2,283.76

31

toward another invoice, Invoice #22.  Ms. Smith-Scott acknowledged to the hearing judge below that Invoice #23 was entirely inaccurate.  Likewise, Ms. Combs never owed Ms. Smith-Scott the $1,686.13 balance.

The second invoice attached to Ms. Smith-Scott's email, labeled "Invoice #31," was dated February 22, 2017 and contained entries related to the bankruptcy appeal in the U.S. District Court.  Despite agreeing to represent Ms. Combs on appeal for a flat fee, Invoice #31 contained hourly billing entries for work purportedly performed on the appeal.  However, as noted *supra*, Ms. Combs elected to dismiss the appeal before Ms. Smith-Scott undertook any substantive work.  Prior to sending Invoice #31, Ms. Smith-Scott never informed Ms. Combs that she would charge on an hourly basis if Ms. Combs chose not to pursue the appeal.  The billing entries in Invoice #31 were not accurate and Ms. Combs did not owe the $3,300 balance to Ms. Smith-Scott.

Ms. Combs reviewed these invoices and emailed Ms. Smith-Scott on February 23, 2017 at 6:13 a.m., to express her concern that they contained inaccuracies and failed to account for previous payments.  At 7:55 a.m., Ms. Smith-Scott, without having addressed any of Ms. Combs' concerns, charged Ms. Combs' credit card through Square in the amount of $4,986.13.  Twenty minutes later, Ms. Smith-Scott responded to Ms. Combs' email.  Ms. Smith-Scott made several threatening statements to Ms. Combs and threatened to disclose confidential information about Ms. Combs to adverse parties.  Ms. Smith-Scott's email concluded by stating, "But, don't call me or prevent my payment in full.  We all have a day of reckoning!"

The hearing judge acknowledged that the issue of whether Ms. Combs authorized Ms. Smith-Scott to charge her credit card presents two separate, but related questions. First, did Ms. Combs give Ms. Smith-Scott her credit card information on February 23, 2017? Second, did Ms. Combs authorize payment in the amount of $4,986.13 on February 23, 2017? On the first question, the hearing judge found for Ms. Smith-Scott, i.e., that there lacked clear and convincing evidence to show that Ms. Smith-Scott converted Ms. Combs' credit card number. On the second question, the hearing judge found that clear and convincing evidence supported Bar Counsel's account that Ms. Combs did not authorize payment in the amount of $4,986.13.

On February 27, 2017, Ms. Combs disputed the charge with her bank, Wells Fargo. That same day, Wells Fargo returned the full amount to Ms. Combs' account and notified Ms. Smith-Scott of the dispute. Wells Fargo conducted an investigation into the disputed charge. As part of the investigation, Ms. Smith-Scott submitted a written explanation to the bank ("Wells Fargo Letter") in which she stated that Ms. Combs gave verbal authorization over the phone to make the charge. With the Wells Fargo Letter, Ms. Smith-Scott attached Invoice #23 and Invoice #31 for support, despite knowing the inaccuracies in each invoice. Neither invoice reflected the $4,000 Ms. Combs had already paid toward the bankruptcy case. Moreover, the hearing judge credited Ms. Combs' testimony that she spoke to Ms. Smith-Scott by telephone on February 28, 2017, and expressly informed her that she did not authorize a charge in the amount of $4,986.13. After the call, Ms. Combs emailed Ms. Smith-Scott and requested an invoice "on any unpaid balance as of" February 28, 2017. Ms. Combs stated, "[i]t is still my intent and desire to come to an agreement and

33

conclusion on this matter." (Alteration in original). On March 1, 2017, Ms. Smith-Scott emailed Ms. Combs and threatened to put her into an involuntary Chapter 7 bankruptcy proceeding so that she could get paid as a creditor. Ms. Smith-Scott failed to provide Ms. Combs with a revised invoice in response to Ms. Combs' earlier requests.

On April 12, 2017, Ms. Combs paid Ms. Smith-Scott the remaining $200 installment toward the $4,200 bankruptcy fee by money order. Ms. Combs testified that she made the final installment payment because she wanted to make a good faith attempt to fulfill her end of the contract with Ms. Smith-Scott to pay $4,200 for the bankruptcy representation. At the time Ms. Combs made the $200 payment, Wells Fargo had returned the $4,986.13 to Ms. Combs' account based on the February 27 dispute. However, after the investigation, Wells Fargo ultimately resolved the dispute in Ms. Smith-Scott's favor. Consequently, Wells Fargo removed $4,986.13 from Ms. Combs' account on May 18, 2017. On April 16, 2017, Ms. Smith-Scott sent Ms. Combs a letter acknowledging the $200 payment. In the letter, Ms. Smith-Scott advised that, while Ms. Combs did not owe any legal fees, she intended to keep the $200. In part, the letter read:

> However, due to your attempt at disputing your payment and the hardship that I had to endure, the Two Hundred Dollars will be used to cover the expense of protecting myself from your manipulative behavior.

Ms. Smith-Scott never returned the $200 to Ms. Combs.

Ms. Smith-Scott testified that, despite the inaccuracies in Invoice #23 and Invoice #31, Ms. Combs still owed at least $4,986.13 in unpaid legal fees, and that she communicated that balance to Ms. Combs. The hearing judge did not credit this testimony. In rejecting Ms. Smith-Scott's testimony, the hearing judge noted that (1) Ms. Smith-Scott

34

did not present any documentary evidence to support her contention that Ms. Combs owed $4,986.13; (2) much of Ms. Smith-Scott's testimony regarding her billing of Ms. Combs was contradicted by other testimony, the documentary record, or her statements to Bar Counsel during its investigation; and (3) Ms. Smith-Scott admitted at the hearing that, were she to do it all over again, she would have handled the billing of Ms. Combs' account differently. Specifically, the hearing judge discussed this example:

> [Ms. Smith-Scott] testified at the hearing that Ms. Combs gave her explicit permission to charge her credit card in the amount of $4,986.13 and that Ms. Combs understood that the payment was "conditional." But there is no contemporaneous evidence indicating that [Ms. Smith-Scott] advised Ms. Combs that the $4,986.13 payment was conditional and she never advised Wells Fargo that the disputed payment was "conditional." Moreover, when given an opportunity to explain herself to Bar Counsel during its investigation, [Ms. Smith-Scott] did not make such a claim.

*Bar Counsel Investigation II*

Ms. Combs filed a complaint with the Commission against Ms. Smith-Scott on May 26, 2017. The focus of Ms. Combs' complaint centered on Ms. Smith-Scott's unauthorized charge of Ms. Combs' credit card. Ms. Smith-Scott responded to the complaint on July 5, 2017. Ms. Smith-Scott attached the Wells Fargo Letter to her response, which included the false representation that Ms. Combs authorized her to charge the credit card in the amount of $4,986.13. The Wells Fargo Letter did not indicate that the charge was conditional. Additionally, Ms. Smith-Scott attached Invoice #23 and Invoice #31, which she knew to be inaccurate. Ms. Smith-Scott's response to Bar Counsel likewise omitted

35

any representation that Ms. Combs authorized her to charge the credit card in the amount of $4,986.13 or that the charge was "conditional."

Ms. Smith-Scott sought to intentionally mislead Bar Counsel into believing the charge was authorized by submitting the Wells Fargo Letter. On October 19, 2017, Ms. Smith-Scott submitted a second response to Bar Counsel wherein she intentionally gave Bar Counsel the false impression that the $4,986.13 amount was accurate and owed, despite her knowledge that it was not an accurate figure reflecting legal fees that Ms. Combs owed. Again, Ms. Smith-Scott did not state in the second response that the $4,986.13 charge was somehow "conditional."

*Representation of Angela Plater*

In October 2014, foreclosure proceedings were instituted against Ms. Angela Plater in the Circuit Court for Prince George's County. *See WBGLMC v. Angela Plater*, Case No. CAEF14-27671. The foreclosure action related to Ms. Plater's home. As a result, Ms. Plater retained Ms. Smith-Scott to assist in saving the home from foreclosure. Ms. Plater and Ms. Smith-Scott did not execute a written retainer agreement.

In early 2015, Ms. Smith-Scott represented Ms. Plater at a foreclosure mediation. Ms. Smith-Scott failed to advise Ms. Plater of the basis or rate of her legal fee prior to the start of the mediation. At the conclusion of the mediation, Ms. Smith-Scott requested payment from Ms. Plater, which she promptly made. At no point during the representation in the foreclosure action did Ms. Smith-Scott advise Ms. Plater of her hourly rate. The mediation did not result in an agreement.

36

On March 24, 2015, the circuit court entered an order permitting the foreclosure of Ms. Plater's home. The creditor subsequently scheduled the foreclosure sale for October 20, 2015. Ms. Plater received notice of the sale and contacted Ms. Smith-Scott to inform her that October 20 was her birthday. Ms. Plater asked that Ms. Smith-Scott assist in postponing the foreclosure so that it would not occur on Ms. Plater's birthday. To achieve a postponement, Ms. Smith-Scott suggested that Ms. Plater file a bankruptcy petition. Ms. Plater agreed to file for bankruptcy solely for the purpose of delaying the foreclosure sale, but advised Ms. Smith-Scott that she had no intention of pursuing the bankruptcy through to a liquidation or reorganization of her debts. Ms. Plater further agreed to pay Ms. Smith-Scott a flat fee of $1,500 to file the bankruptcy petition.

Ms. Plater met Ms. Smith-Scott at her law office to prepare the bankruptcy petition on October 19, 2015. Aware that Ms. Plater did not actually intend to pursue bankruptcy, Ms. Smith-Scott advised that she could file a "skeleton form." By "skeleton form," Ms. Smith-Scott meant that she could file the bare minimum bankruptcy petition and intentionally omit other required documentation. Ms. Smith-Scott advised Ms. Plater that without the required documentation, the Bankruptcy Court would dismiss the petition within two to three weeks. With Ms. Plater in the office, Ms. Smith-Scott prepared a Disclosure of Compensation of Attorney for Debtor form,[13] in which Ms. Smith-Scott

---

[13] The Disclosure of Compensation of Attorney for Debtor is filed contemporaneously with a bankruptcy petition. In completing the form, an attorney certifies the "compensation paid . . . within one year before the filing of the petition in bankruptcy, or agreed to be paid . . . , for services rendered or to be rendered on behalf of the debtor." *See* Administrative Office of the U.S. Courts, *Disclosure of Compensation of Attorney for*

represented that Ms. Plater agreed to pay a flat fee of $4,200 for the representation. Ms. Plater questioned Ms. Smith-Scott about the $4,200 figure because it did not comport with her understanding of the agreed upon fee arrangement. Ms. Smith-Scott responded by misrepresenting to Ms. Plater that the form must be submitted to the Bankruptcy Court in that format. On October 19, 2015, Ms. Plater paid Ms. Smith-Scott $1,500 to file the petition.

That same day, Ms. Smith-Scott filed Ms. Plater's Chapter 13 bankruptcy petition. *See In re: Angela M. Plater*, Case No. 15-24508-TJC. The bankruptcy petition was without substantial justification because Ms. Smith-Scott filed it solely for the purpose of preventing the foreclosure sale from occurring. Ms. Smith-Scott had no intention of completing the required filings to ensure that the case would move forward. Moreover, Ms. Smith-Scott filed the Disclosure of Compensation of Attorney for Debtor with a knowingly false statement that Ms. Plater agreed to pay a flat fee of $4,200.

On October 20, 2015, the Bankruptcy Court notified Ms. Smith-Scott that Ms. Plater's petition lacked several required documents. The Bankruptcy Court further explained that if the documents were not submitted by November 2, 2015, the case would be dismissed. Because Ms. Smith-Scott knew that Ms. Plater did not intend to pursue bankruptcy relief, she took no action in response to the notice and did not discuss the notice with Ms. Plater. On November 6, 2015, the Bankruptcy Court dismissed Ms. Plater's

*Debtor*, https://www.uscourts.gov/forms/bankruptcy-forms/disclosure-compensation-attorney-debtor-0 (last visited June 26, 2020) archived at https://perma.cc/636P-YZCG.

bankruptcy case for failure to file the required documents.  As a result of the dismissal, the automatic stay lifted.  Ms. Smith-Scott did not discuss the dismissal with Ms. Plater.

On December 9, 2015, Ms. Smith-Scott entered her appearance in Ms. Plater's pending foreclosure case.  That same day, Ms. Smith-Scott filed a Motion to Stay and/or Dismiss the Foreclosure Proceedings.  The circuit court denied the Motion on January 5, 2016 because it (1) failed to state a valid defense or present a meritorious argument; (2) was not submitted under oath or supported by affidavit as required by Maryland Rule ("Md. Rule") 14-211(a)(3)(A); and (3) failed to comply with Md. Rule 14-211(a)(3)(C).  Ms. Plater's home sold at a foreclosure sale on January 5, 2016.

Ms. Smith-Scott filed a Motion to Vacate Foreclosure Sale on February 5, 2016.  Ms. Plater, acting *pro se*, filed Exceptions of Sale on February 22, 2016.  The circuit court denied both motions on March 22, 2016.  Ms. Plater then retained Ms. Smith-Scott to file an appeal of the circuit court's two orders to the Court of Special Appeals.  Ms. Smith-Scott agreed to handle the appeal for a flat fee of $4,000.  Ms. Smith-Scott advised Ms. Plater that she could pay the fee in installments, but did not provide a date by which the total fee became due.  Ms. Plater and Ms. Smith-Scott did not execute a written retainer agreement for the representation.

Ms. Smith-Scott filed a Notice of Appeal and a Motion to Stay Proceedings Pending Appeal in the circuit court on April 19, 2016.  For these filings, Ms. Smith-Scott charged and received an additional $500.  Ms. Plater paid this amount by check on April 7, 2016.  Ms. Smith-Scott filed a Civil Appeal Information Report in the Court of Special Appeals

on May 2, 2016. For this filing, Ms. Smith-Scott charged and received an additional $50. Ms. Plater paid this amount by check on April 22, 2016.

On July 5, 2016, the circuit court granted Ms. Plater's Motion to Stay on the condition that she post a supersedeas bond in the amount of $25,000. Ms. Smith-Scott convinced Ms. Plater that there existed a meritorious legal argument that would obviate the need for Ms. Plater to post a bond. Accordingly, Ms. Smith-Scott argued to the circuit court that, since Ms. Plater was a bona fide purchaser, she was not required to post a bond. For this filing, Ms. Smith-Scott charged and received an additional $250. Ms. Plater paid this amount by check on July 12, 2016 when the Motion to Reconsider had been completed. Ms. Smith-Scott did not advise Ms. Plater that she had an outstanding balance or that future legal fees would accrue.

In late August 2016, one of Ms. Smith-Scott's employees contacted Ms. Plater and asked whether she wanted to pursue her appeal. Ms. Plater confirmed that she wanted to pursue the appeal. By that time, the Court of Special Appeals had notified Ms. Smith-Scott that Ms. Plater's appellate brief must be submitted by September 29, 2016. Ms. Smith-Scott's employee informed Ms. Plater about the filing deadline. On September 7, 2016, Ms. Plater paid Ms. Smith-Scott the first installment for the appeal in the amount of $1,000. Ms. Plater paid by check; the notation "toward brief" appeared in the memo line. Ms. Smith-Scott failed to deposit and maintain the funds in an attorney trust account until earned or expenses incurred. On September 22, 2016, Ms. Plater paid Ms. Smith-Scott a second installment for the appeal in the amount of $1,000. Ms. Plater again paid by check; the notation "payment toward appeal" appeared in the memo line. Ms. Smith-Scott failed

40

to deposit and maintain the funds in an attorney trust account until earned or expenses incurred.

After Ms. Smith-Scott received Ms. Plater's funds, Ms. Smith-Scott did not perform any meaningful legal work on Ms. Plater's appeal. Ms. Smith-Scott failed to prepare or submit Ms. Plater's appellate brief by the September 29 filing deadline. Ms. Smith-Scott failed to request an extension of time. During a conversation with Ms. Smith-Scott in the first week of October 2016, after the deadline had expired, Ms. Smith-Scott intentionally misrepresented to Ms. Plater that she intended to file the appellate brief within one week. Ms. Smith-Scott failed to file the brief and intentionally concealed her inaction from Ms. Plater.

The Court of Special Appeals dismissed Ms. Plater's appeal on October 19, 2016 as a result of Ms. Smith-Scott's failure to file an appellate brief. Thereafter, for approximately six weeks, Ms. Smith-Scott concealed the dismissal order from Ms. Plater. Throughout early October, Ms. Plater attempted to contact Ms. Smith-Scott on several occasions to find out the status of the appeal, but Ms. Smith-Scott failed to respond. Ms. Plater reached out in the middle of October and scheduled a meeting with Ms. Smith-Scott for the end of the month. On the day of the meeting, Ms. Smith-Scott called Ms. Plater and cancelled. Still, in that conversation, Ms. Smith-Scott did not inform Ms. Plater that the appeal had been dismissed.

Ms. Plater emailed Ms. Smith-Scott on November 14, 2016 requesting a copy of her appellate brief. Ms. Smith-Scott failed to respond. Ms. Plater emailed Ms. Smith-Scott again on November 30, 2016, again requesting a copy of her appellate brief. Ms. Smith-

41

Scott failed to respond. By November 30, neither Ms. Smith-Scott, nor any member of her staff, had informed Ms. Plater that the appeal had been dismissed. In late November, Ms. Plater contacted the Court of Special Appeals and learned, for the first time, that her appeal had been dismissed.

Ms. Plater spoke with Ms. Smith-Scott by telephone in early December 2016. During the conversation, Ms. Smith-Scott still did not inform Ms. Plater of the dismissal. Ms. Plater scheduled a meeting with Ms. Smith-Scott for the middle of December. On the day of the appointment, Ms. Plater went to Ms. Smith-Scott's law office, yet Ms. Smith-Scott failed to appear. An employee called Ms. Smith-Scott so that she could speak with Ms. Plater. On this call, six weeks after the dismissal of Ms. Plater's appeal, Ms. Smith-Scott informed Ms. Plater of the dismissal for the first time. Ms. Plater immediately requested that Ms. Smith-Scott return her money. Ms. Smith-Scott agreed, but explained that she would need three weeks to do so.

A few weeks later, Ms. Plater went to Ms. Smith-Scott's law office to collect her refund. Ms. Smith-Scott was not there. An employee informed Ms. Plater that Ms. Smith-Scott went to the bank to get a check. Ms. Plater waited approximately thirty minutes to an hour for Ms. Smith-Scott to return; however, Ms. Smith-Scott never arrived. In January 2017, Ms. Plater returned to Ms. Smith-Scott's office a second time to collect her refund. While Ms. Smith-Scott was present in the office, an employee presented Ms. Plater with a check in the amount of $1,025. Ms. Plater immediately disputed the amount of the check and requested a full refund of $2,000. Despite having performed no meaningful work on Ms. Plater's appeal, Ms. Smith-Scott refused to refund the full $2,000. Ms. Smith-Scott

42

failed to describe the legal work or otherwise provide Ms. Plater with an invoice detailing the legal services purportedly rendered that justified Ms. Smith-Scott retaining $975. Ms. Plater did not deposit the $1,025 check.

*Bar Counsel Investigation III*

Ms. Plater filed a complaint with the Commission against Ms. Smith-Scott on November 2, 2017. Bar Counsel wrote to Ms. Smith-Scott on November 9, 2017 and requested a response to Ms. Plater's complaint. Ms. Smith-Scott, through counsel, filed a response on January 19, 2018. Ms. Smith-Scott attempted to justify her failure to refund all of Ms. Plater's funds by explaining that she had "met with Ms. Plater; identified the legal issues to pursue on appeal; prepared the Civil Information Sheet; filed a motion to stay the foreclosure pending the appeal; and filed a motion to mitigate the necessity of a supersedeas bond."

Ms. Smith-Scott concealed from Bar Counsel that she had received additional funds from Ms. Plater to prepare each of these documents. Moreover, in her response, Ms. Smith-Scott stated that she had incurred $825 in legal fees for "legal work performed for Ms. Plater while the matter was pending on appeal." With her response, Ms. Smith-Scott provided a refund check to Ms. Plater in the amount of $1,140. Ms. Plater did not deposit the check because she believed she was owed the full $2,000 she paid toward the appeal.

*Representation of Furrah Deeba*

Ms. Smith-Scott filed a bankruptcy petition on behalf of Ms. Furrah Deeba in the Bankruptcy Court on January 31, 2017.[14] *See In re: Furrah Deeba*, Case No: 17-11325. In the petition, Ms. Smith-Scott inadvertently used a different client's social security number. This error prompted a notice of a prior bankruptcy filing. Consequently, pursuant to the Bankruptcy Code, the automatic stay imposed only lasted thirty days.

For this reason, Ms. Smith-Scott filed Debtor's Motion to Extend Automatic Stay on February 8, 2017. The Bankruptcy Court scheduled a hearing on the motion for April 17, 2017. Ms. Smith-Scott failed to appear at the hearing and failed to notify the Bankruptcy Court or the trustee that she would not appear. Therefore, on April 17, the court denied the motion and noted on the order, "failure to appear at the hearing held on April 17, 2017 and prosecute the motion." The Bankruptcy Court subsequently dismissed Ms. Deeba's case without the entry of a discharge on July 24, 2017 for failure to file the required financial management course certification.

In Ms. Smith-Scott's Answer to Bar Counsel, she admitted to the facts set forth regarding Ms. Deeba, but alleged that she would provide mitigation before the hearing judge. Ms. Smith-Scott failed to present any mitigation as it pertains to Ms. Deeba.

*Representation of Benjamin Thomas, Jr.*

Ms. Smith-Scott filed a Chapter 13 bankruptcy petition on behalf of Mr. Benjamin Thomas Jr., in the Bankruptcy Court on April 3, 2017. *See In re: Benjamin Thomas, Jr.*,

---

[14] The hearing judge's findings of fact indicate that Ms. Deeba's petition was filed on December 31, 2017; however, the record reveals a filing date of January 31, 2017.

Case No. 17-14620.  The Bankruptcy Court scheduled a plan confirmation hearing in Mr. Thomas' case for August 8, 2017.  Ms. Smith-Scott intentionally failed to appear at the hearing.  Ms. Smith-Scott further failed to notify the court or the Chapter 13 Trustee that she would not appear.  As a result, the Bankruptcy Court denied the confirmation of Mr. Thomas' Chapter 13 plan without leave to amend.  Ms. Smith-Scott testified that she had Mr. Thomas' permission not to attend the hearing.  Further, Ms. Smith-Scott testified that Mr. Thomas is still her client.  Bar Counsel failed to present any evidence to the contrary.

*Representation of John Thomas Jones, Jr.*

Ms. Smith-Scott filed a Chapter 13 bankruptcy petition on behalf of Mr. John Thomas Jones, Jr., in the Bankruptcy Court on October 7, 2016.  *See In re: John Thomas Jones, Jr.*, Case No. 16-23509.  The Bankruptcy Court scheduled a plan confirmation hearing in Mr. Jones' case for January 31, 2017.  Ms. Smith-Scott intentionally failed to appear at the hearing.  Ms. Smith-Scott further failed to notify the court or the Chapter 13 Trustee that she would not appear.  As a result, the Bankruptcy Court denied the confirmation of Mr. Jones' Chapter 13 plan without leave to amend.  In Ms. Smith-Scott's Answer to Bar Counsel, she admitted to the facts set forth regarding Mr. Jones, but alleged that she would provide mitigation before the hearing judge.

*Representation of Theresa Saunders*

Ms. Smith-Scott filed a Chapter 13 bankruptcy petition on behalf of Ms. Theresa Saunders in the Bankruptcy Court on May 19, 2017.  Ms. Saunders filed a *pro se* Motion/Request for Release of Attorney on December 27, 2017.  In the motion, Ms. Saunders requested that the Bankruptcy Court "release" Ms. Smith-Scott as her attorney

"based upon unsatisfactory actions and irreconcilable differences in miscommunication that have affected her bankruptcy process and may impact the outcome of [her] case." Ms. Saunders further alleged that Ms. Smith-Scott submitted an amended bankruptcy plan on December 12, 2017 without Ms. Saunders' review or approval.

Ms. Smith-Scott filed a Response in Support of Debtor's Motion/Request for Release of Attorney on December 29, 2017. Ms. Smith-Scott stated in her response that "it is this Legal Counsel's belief that the Debtor is no longer protected by Attorney-Client Privilege and has provided the court with e-mails that contradict statements made by the Debtor and allows the Court to get a better understanding of the actions of Legal Counsel." Ms. Smith-Scott cited no legal authority to support her position. Without obtaining Ms. Saunders' informed consent, Ms. Smith-Scott attached to the filing several confidential email communications between Ms. Smith-Scott and Ms. Saunders that occurred between August 4, 2017 and December 20, 2017. Ms. Smith-Scott did not communicate her intent to publicly disclose the emails to Ms. Saunders in advance of the filing. Moreover, Ms. Smith-Scott did not file the confidential communications under seal or take any other measures to prevent the public disclosure.

Ms. Saunders emailed Ms. Smith-Scott on January 29, 2018 and confronted her about the disclosure of the confidential emails. Ms. Smith-Scott failed to take any remedial action to have the confidential communications sealed or otherwise protected from public review.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) ("[T]his Court reviews for clear error a hearing judge's findings of fact . . . ."); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated a rule of professional conduct. *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

Either party may file "exceptions to the findings and conclusions of the hearing judge." Md. Rule 19-728(b). If exceptions to the findings of fact are filed, the Court "shall determine whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-741(b)(2)(B); *see also Attorney Grievance Comm'n v. Mahone*, 435 Md. 84, 104 (2013). We may confine our review to the findings of fact challenged by the exceptions, mindful though, that the hearing judge is afforded due regard to assess the credibility of witnesses. *Id.* A hearing judge's findings of fact are not clearly erroneous "where 'there is any competent evidence to support the' finding of fact." *Attorney Grievance Comm'n v. Donnelly*, 458 Md. 237, 276 (2018) (quoting *Attorney Grievance Comm'n v. Merkle*, 440 Md. 609, 633 (2014)). "If the hearing judge's factual

47

findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 419 (2009).

## DISCUSSION

Bar Counsel does not except to any of the hearing judge's findings of fact. Bar Counsel excepts only to the absence of the hearing judge's conclusion of law regarding Rule 1.15. Ms. Smith-Scott notes several exceptions to both the hearing judge's findings of fact and conclusions of law. We shall address each in turn.

### A.     *Exceptions to the Hearing Judge's Findings of Fact*

Ms. Smith-Scott excepts to the hearing judge's *failure* to make the following factual findings: (1) Ms. Smith-Scott's filings in her personal bankruptcy case were done in good faith and were not frivolous at the time of filing; (2) Ms. Smith-Scott represented Ms. Combs in five separate legal matters beginning in October 2015; (3) Ms. Smith-Scott performed a significant amount of legal work in Ms. Combs' five matters; (4) Ms. Smith-Scott performed legal work totaling $11,087.75 for Ms. Combs, yet wrote the total amount down to $7,501.13; and (5) Ms. Smith-Scott earned the full amount of legal fees paid by Ms. Combs.

A hearing judge is entitled to "a great deal of discretion in determining which evidence to rely upon." *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 195 (2020). Indeed, "[a]s far as what evidence a hearing judge must rely upon to reach his or her conclusions, we have said that the hearing judge 'may pick and choose what evidence to believe.'" *Attorney Grievance Comm'n v. Woolery*, 462 Md. 209, 230 (2018) (internal

48

citation and some quotations omitted). "We reiterate this point in light of [Ms. Smith-Scott's] numerous exceptions to findings of facts in which [s]he suggests that the hearing [judge] *should have made* certain findings of fact . . . ." *Id.* (emphasis in original). Accordingly, because we decline to overrule a hearing judge's findings of fact absent clear error, we overrule Ms. Smith-Scott's "generalized exceptions as to what findings of fact the hearing [judge] failed to make." *Id.*

Next, Ms. Smith-Scott excepts to five of the hearing judge's findings of fact. First, Ms. Smith-Scott contends that the hearing judge should not have found that Ms. Smith-Scott intentionally misrepresented to Bar Counsel that "[t]he Chapter 7 Trustee began to sale [sic] property by omitting facts and misrepresenting other facts, which caused the Bankruptcy Judge to rule in [the Chapter 7 Trustee's] favor which included an order of contempt and being threatened with incarceration," because Ms. Smith-Scott "sincerely and honestly believed" that she acted in good faith in contesting the seizure of her law office. Second, Ms. Smith-Scott asserts that the hearing judge should not have found that Ms. Smith-Scott willfully misrepresented to Ms. Combs that she had filed a Motion for Reconsideration in December 2016. For support, Ms. Smith-Scott suggests that her hospitalization in December of 2016 negates the willfulness of her misrepresentation to Ms. Combs.

These first two exceptions turn largely on Ms. Smith-Scott's intent in making statements to Bar Counsel and Ms. Combs. We have already said that this Court "shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Md. Rule 19-741(b)(2)(B). Doing just that, we determine that the hearing

49

judge did not err in finding that Ms. Smith-Scott's statements contained in her response to Bar Counsel and Ms. Combs were knowing, intentional, and willful.

Third, Ms. Smith-Scott maintains that the hearing judge should not have found that Ms. Combs did not authorize payment in the amount of $4,986.13 on February 23, 2017. This exception necessarily urges the Court to make credibility decisions based on testimony at the hearing. We decline to do so. Ms. Combs testified at the hearing that she spoke to Ms. Smith-Scott on February 28, 2017 and informed her that she did not authorize the $4,986.13 charge. Ms. Smith-Scott testified that, despite the inaccuracies in Invoice #23 and Invoice #31, Ms. Combs owed her $4,986.13. The hearing judge explicitly stated that he credited Ms. Combs' testimony and rejected Ms. Smith-Scott's testimony. Moreover, Ms. Smith-Scott's testimony was contradicted by other testimony, the documentary record, and Ms. Smith-Scott's own statements to Bar Counsel during its investigation. The hearing judge did not clearly err in finding that Ms. Combs did not authorize the charge. Therefore, we overrule Ms. Smith-Scott's exception.

Fourth, Ms. Smith-Scott avers that the hearing judge should not have found that Ms. Plater's bankruptcy filing was without substantial justification. She contends that "it can be a legitimate legal strategy to file a Chapter 13 bankruptcy with the reasonable expectation that the lenders may engage in meaningful financial negotiations." Yet, Ms. Plater's hearing testimony eviscerates this argument. Ms. Plater testified that she "didn't have any intention[] of going through with the bankruptcy" and she "informed [Ms. Smith-Scott] of that." To be sure, Ms. Plater reiterated this point, testifying

50

I didn't have any intention of going through with the bankruptcy, I just wanted to stop the [foreclosure] sale. [Ms. Smith-Scott] indicated that the filing would stop the sale. So that's all I intended to do. And I made it clear to her that's all I intended to do.

Indeed, this is confirmed by Ms. Smith-Scott's filing of a "skeleton form," notably missing required documents for a legitimate bankruptcy petition. The hearing judge did not err in determining that Ms. Smith-Scott filed a bankruptcy petition on behalf of Ms. Plater without substantial justification.

Fifth, Ms. Smith-Scott argues that the hearing judge should not have found that Ms. Smith-Scott made a knowingly false statement that Ms. Plater agreed to pay $4,200 as the total legal fee for bankruptcy representation. At the hearing, Bar Counsel showed Ms. Plater a copy of the bankruptcy petition Ms. Smith-Scott filed on her behalf. Bar Counsel directed Ms. Plater to the portion of the petition disclosing Ms. Smith-Scott's compensation. The following exchange occurred:

[BAR COUNSEL]: What is that?

[MS. PLATER]: This indicates the amount, the price which is – okay. Compensation for attorney from debtor.[15] It has on here $4,200 and it has $1,[5]00 and $2,700. But there was no discussion of me paying $4,200. I did give her the $1,[5]00 on that date.

\* \* \*

[MS. PLATER]: I did question her on that date when I saw that on the document because it shocked me because it's, like, okay, where did the $4,200 come from. She indicated that that's what she had to do to submit the

---

[15] The Disclosure of Compensation of Attorney for Debtor reads:

| | |
|---|---|
| For legal services, I have agreed to accept: | $4,200.00 |
| Prior to the filing of this statement I have received: | $1,500.00 |
| Balance Due: | $2,700.00 |

form, that it had to be done in this format. But I knew I wasn't paying $4,200. I gave her what she told me the $1,500 and that was it.

The form also contained a section entitled "CERTIFICATION," which reads "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor[] in this bankruptcy proceeding." Ms. Smith-Scott's signature appears directly below this statement. The hearing judge did not err in determining that Ms. Smith-Scott made a knowingly false statement, and we overrule this exception.

Having overruled Ms. Smith-Scott's exceptions, and having determined that those findings of fact are supported by clear and convincing evidence, we turn to the hearing judge's conclusions of law.

### B.    *Conclusions of Law*

The hearing judge concluded that Ms. Smith-Scott violated Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.15, 1.16, 3.1, 3.2, 3.3, 3.4, 4.1, 8.1, 8.4, and 19-404.

Bar Counsel excepts to the hearing judge's failure to find that Ms. Smith-Scott's conduct, regarding her representation of Ms. Plater, violated Rule 1.15. Ms. Smith-Scott excepts to the hearing judge's conclusions of law that she violated the following Rules: 1.5, 1.6, 1.15, 3.3, 3.4, 4.1, 8.1, 8.4, and 19-404. Based upon our independent review of the record, we sustain Bar Counsel's exception as to Rule 1.15 and uphold the remainder of the hearing judge's conclusions of law.

*1.     Rule 1.1 (Competence).*

Rule 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  A violation of Rule 1.1 occurs when an attorney "fails to act or acts in an untimely manner, resulting in harm to his or her client."  *Attorney Grievance Comm'n v. Maldonado*, 463 Md. 11, 38 (2019) (quoting *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012)).  An attorney's failure to appear on behalf of a client without explanation is an egregious violation of this Rule. *See Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 694–95 (2019).  "Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1."  *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 54 (2006).  Furthermore, the "failure to maintain [client] funds in a proper trust account demonstrates incompetence."  *Attorney Grievance Comm'n v. Maignan*, 390 Md. 287, 296–97 (2005).

The hearing judge found that Ms. Smith-Scott's conduct violated Rule 1.1 in a variety of ways.  In Ms. Smith-Scott's representation of Ms. Combs, she violated the Rule by: (1) failing to deposit and maintain the unearned portion of Ms. Combs' October 14, 2015 payment in an attorney trust account until earned or expenses incurred; (2) failing to competently represent Ms. Combs before the Court of Special Appeals when she neglected to provide the clerk of that court with a signed Civil Appeal Information Report, even after being contacted to do so, thereby causing the court to dismiss Ms. Combs' appeal; (3) misinforming Ms. Combs that her November 3, 2016 Bankruptcy Court hearing had been

53

rescheduled and that their appearance was not required when the hearing had not been rescheduled; (4) acting without the required thoroughness and preparation by filing an untimely Emergency Motion for Reconsideration six weeks after Ms. Combs requested she file the motion; and (5) refusing to provide timely or accurate billing statements to Ms. Combs.

The hearing judge further found that Ms. Smith-Scott violated Rule 1.1 in her representation of Ms. Plater by: (1) failing to deposit and maintain the unearned portion of Ms. Plater's September 2016 payments in an attorney trust account until earned or expenses incurred; and (2) failing to competently represent Ms. Plater before the Court of Special Appeals by neglecting to file an appellate brief or request an extension of time, causing the court to dismiss Ms. Plater's appeal. Finally, the hearing judge concluded that Ms. Smith-Scott violated Rule 1.1 by failing to appear at hearings in the course of her representation of Ms. Deeba and Mr. Jones.

Ms. Smith-Scott does not except to these conclusions of law. Moreover, our independent review of the record confirms that clear and convincing evidence supports the hearing judge's conclusion that Ms. Smith-Scott's conduct violated Rule 1.1.

2.    *Rule 1.2 (Scope of Representation and Allocation of Authority).*

Rule 1.2(a) provides, in pertinent part:

[A]n attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter.

54

Under this Rule, an attorney must "'inform a client of the status of his or her case' so the client has the 'ability to make informed decisions.'" *Edwards*, 462 Md. at 697 (quoting *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 182 (2015)). A Rule 1.2(a) violation may occur when an attorney fails to prosecute his or her client's case and fails to communicate the status of the case to the client. *Id.* (citing *Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 394 (2017)); *see also Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 320 (2012) (concluding that an attorney's inaction leading to the dismissal of two clients' cases—combined with the attorney's failure to communicate as much and ignorance of the clients' request for information—constituted a violation of Rule 1.2(a)).

Clear and convincing evidence supports the hearing judge's conclusion that Ms. Smith-Scott violated Rule 1.2 by failing to prepare or file an appellate brief in her representation of Ms. Plater. Ms. Plater retained Ms. Smith-Scott to prosecute an appeal in her foreclosure action. Ms. Plater and Ms. Smith-Scott agreed on a flat fee of $4,000, toward which Ms. Plater made two installment payments totaling $2,000. The Court of Special Appeals imposed a filing deadline of September 29, 2016. Yet, Ms. Smith-Scott failed to prepare or file an appellate brief, or even request an extension of time to accomplish Ms. Plater's sole objective in the representation. *See Attorney Grievance Comm'n v. Ucheomumu*, 462 Md. 280, 311 (2018) (concluding that an attorney's failure to prepare and file appellate brief constituted "a failure to accomplish the objectives of [the] representation").

Ms. Smith-Scott does not except to the hearing judge's conclusion regarding Rule 1.2. Based on our independent review, we agree with the hearing judge that Ms. Smith-Scott violated Rule 1.2 in her representation of Ms. Plater.

3.    *Rule 1.3 (Diligence).*

Rule 1.3 provides that "[a]n attorney shall act with reasonable diligence and promptness in representing a client." Rule 1.3 "can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208–09 (2020) (quoting *Edwards*, 462 Md. at 699 (alteration in original)). Notably, the same justifications for finding a violation of Rule 1.1 can support a Rule 1.3 violation. *Id.* at 209.

The hearing judge concluded that based on Ms. Smith-Scott's conduct, discussed in reference to Rule 1.1, *supra* at 53–54, and Rule 1.4, *infra* at 56–60, Ms. Smith-Scott violated Rule 1.3. Ms. Smith-Scott does not except to these conclusions. Our independent review of the record reveals that Ms. Smith-Scott violated Rule 1.3.

4.    *1.4 (Communication).*

Rule 1.4 provides:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects

56

assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Pursuant to Rule 1.4, an attorney is required "to communicate with their clients and keep them reasonably informed of the status of their legal matters." *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020). A violation of this Rule occurs when a client repeatedly attempts to contact the attorney, but the attorney fails to respond. *Id.* Moreover, Rule 1.4 is violated "when an attorney 'fails to communicate crucial information about the status of the case,'" or where "the attorney fails to comply promptly with a client's reasonable requests for information, which may include a general status update or for documents pertaining to the case." *Id.* (quoting *Hamilton*, 444 Md. at 185).

### *Ms. Combs*

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.4(a)(2)–(3) and (b) by failing to provide Ms. Combs with timely or accurate billing statements, despite Ms. Combs' repeated requests. The hearing judge reasoned that Ms. Combs could not have made informed decisions regarding the representation without knowing the extent of the legal fees that had accrued.

At the meeting between Ms. Smith-Scott and Ms. Combs on February 2, 2017, Ms. Smith-Scott provided an invoice with apparent inaccuracies. Ms. Combs requested a corrected invoice, yet Ms. Smith-Scott failed to provide one. On February 22, 2017, Ms. Smith-Scott emailed Ms. Combs two more inaccurate invoices, which sought nearly $5,000 of fees Ms. Combs did not actually owe. Ms. Combs reviewed the invoices and informed

57

Ms. Smith-Scott that the invoices contained inaccuracies and failed to account for payments already made. Again, on February 28, 2017, Ms. Combs emailed Ms. Smith-Scott and requested an invoice "on any unpaid balance" to date. Ms. Smith-Scott failed to provide a corrected invoice.

Additionally, the hearing judge concluded that Ms. Smith-Scott violated Rule 1.4(a)(2) and (b) when she (1) failed to adequately communicate about the November 3, 2016 hearing; and (2) intentionally misrepresented to Ms. Combs that she had filed the Motion for Reconsideration in Ms. Combs' case before December 28, 2016.

The Bankruptcy Court set a hearing for November 3, 2016 to hear arguments on whether to lift the automatic stay pertaining to Ms. Combs' investment property. Prior to the hearing, Ms. Smith-Scott misinformed Ms. Combs that the hearing had been rescheduled and she need not appear on that date. The hearing had not been rescheduled. It occurred on November 3, and Ms. Smith-Scott and Ms. Combs failed to appear.

The Bankruptcy Court entered an order lifting the automatic stay on November 14, 2016. Ms. Combs immediately requested Ms. Smith-Scott file a Motion for Reconsideration, to which Ms. Smith-Scott agreed. Ms. Combs emailed Ms. Smith-Scott on December 12, 2016 to inquire if the court had issued a ruling. Before this date, Ms. Smith-Scott informed Ms. Combs that she had filed the motion, when in fact she had not. On December 28, 2016, more than two weeks later—six weeks after the Bankruptcy Court lifted the automatic stay—Ms. Smith-Scott filed an untimely Emergency Motion for Reconsideration.

Accordingly, we agree with the hearing judge that clear and convincing evidence supports the conclusion that Ms. Smith-Scott violated Rule 1.4(a) and (b) in her representation of Ms. Combs.

*Ms. Plater*

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.4(a)(2)–(3) and (b) in her representation of Ms. Plater before the Court of Special Appeals.

In late August 2016, Ms. Plater confirmed her interest in pursuing an appeal related to her foreclosure action; specifically, the circuit court's denial of her Motion to Vacate Foreclosure Sale. The Court of Special Appeals established a filing deadline of September 29, 2016. To advance the appeal, Ms. Plater paid Ms. Smith-Scott $1,000 on September 7, 2016 and $1,000 on September 22, 2016. However, after agreeing to the representation and accepting Ms. Plater's payments, Ms. Smith-Scott determined that she would not file the appellate brief by its filing deadline. Yet, Ms. Smith-Scott did not inform Ms. Plater. In early October, after the filing deadline passed, Ms. Smith-Scott spoke with Ms. Plater over the phone. During that conversation, Ms. Smith-Scott neglected to inform Ms. Plater that the filing deadline passed and that she had failed to seek an extension. Instead, Ms. Smith-Scott represented that she intended to file the brief in one week. Ms. Smith-Scott did not author the appellate brief, file it within the one-week period, or inform Ms. Plater of her inaction.

The Court of Special Appeals dismissed Ms. Plater's appeal for the failure to file an appellate brief. Ms. Smith-Scott concealed the dismissal for approximately six weeks. Ms. Smith-Scott ignored several of Ms. Plater's attempts to learn about the status of the appeal.

59

Additionally, Ms. Plater twice requested a copy of the appellate brief she believed Ms. Smith-Scott filed on her behalf. Ms. Smith-Scott failed to respond in any manner. Only in December 2016 did Ms. Smith-Scott first notify Ms. Plater that the Court of Special Appeals dismissed Ms. Plater's appeal. Therefore, we agree with the hearing judge that this conduct—failing to communicate about the status of a client's appeal and intentionally concealing the dismissal of the same—violates Rule 1.4(a) and (b).

The hearing judge further found that Ms. Smith-Scott violated Rule 1.4(a)(2) and (b) when she intentionally misrepresented to Ms. Plater that she completed additional legal work on the appeal to justify keeping a portion of the $2,000 in installment payments. Ms. Smith-Scott performed no substantive legal work on Ms. Plater's appeal. Ms. Smith-Scott failed to specify the legal services she allegedly provided and failed to provide an invoice. Accordingly, clear and convincing evidence supports the hearing judge's conclusion that Ms. Smith-Scott's conduct violated Rule 1.4(a)(2) and (b).

5. *Rule 1.5 (Fees).*

Rule 1.5 provides, in pertinent part:

(a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the attorney will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Rule 1.5 obligates an attorney to charge a reasonable fee. "An advance fee given in anticipation of legal service that is reasonable at the time of the receipt can become unreasonable if the attorney does not perform the agreed-upon services." *Attorney Grievance Comm'n v. Blair*, 440 Md. 387, 403 (2014); *see also Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) ("The reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed[,] an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it."). In *Garrett*, we concluded that a Rule 1.5 violation occurred where the attorney (1) failed to earn his legal fee; (2) failed to appeal at his client's court proceedings; (3) failed to pursue the interests of his clients; and (4) above all, refused to return the unearned fees to his clients. 427 Md. at 224–25.

## Ms. Combs

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.5(a) when she charged Ms. Combs' credit card in the amount of $4,986.13—some of which Ms. Combs had already paid—without Ms. Combs' authorization. The hearing judge further found

that Ms. Smith-Scott violated Rule 1.5(b) when she charged Ms. Combs on an hourly basis for services Ms. Combs never agreed to pay. Ms. Smith-Scott generally excepts to the hearing judge's conclusion that she violated Rule 1.5. She asserts that her acceptance and retention of Ms. Combs' payment related to legal work already performed or performed within a "very short time" after receiving the payment.

Ms. Combs retained Ms. Smith-Scott and agreed to pay a flat fee of $4,200 to represent her in Bankruptcy Court. Ms. Combs paid $4,000 by two installment payments: $1,500 on September 12, 2016 and $2,500 on February 2, 2017. Ms. Smith-Scott emailed Ms. Combs two invoices on February 22, 2017. The first invoice, Invoice #23, contained twenty-six billing entries, most of which related to services rendered in the bankruptcy case for which Ms. Combs had already paid. Still, Ms. Smith-Scott demanded Ms. Combs pay $4,986.13 for work related to bankruptcy fees already charged and collected by Ms. Smith-Scott.

On January 10, 2017, Ms. Smith-Scott appealed an order of the Bankruptcy Court to the U.S. District Court of Ms. Combs' behalf. Ms. Combs agreed to pay Ms. Smith-Scott a flat fee to pursue the appeal. However, before Ms. Smith-Scott completed any substantive work, Ms. Combs elected to forgo the appeal. Despite the flat fee agreement, Ms. Smith-Scott's second invoice, Invoice #31, contained hourly billing entries for legal work purportedly performed on the appeal. Ms. Smith-Scott did not advise Ms. Combs that she would charge on an hourly basis if she chose not to pursue the appeal. This conduct runs afoul of Rule 1.5(b). Nevertheless, Ms. Smith-Scott demanded that Ms. Combs pay for services to which she never agreed, in the amount of $3,300.

Ms. Combs emailed Ms. Smith-Scott on February 23, 2017 and raised concerns about inaccuracies in Invoice #23 and Invoice #31. Ms. Smith-Scott did not review or revise these invoices. Instead, she proceeded to charge Ms. Combs' credit card in the amount of $4, 986.13. This charge occurred without Ms. Combs' authorization. Moreover, Ms. Smith-Scott was keenly aware that Ms. Combs disputed the amount and pursued collection of the charge even after Ms. Combs disputed the same with her credit card company. Therefore, Ms. Smith-Scott collected an unreasonable fee in violation of Rule 1.5(a) when she charged Ms. Combs' credit card in the amount of $4,986.13.

*Ms. Plater*

The hearing judge also concluded that Ms. Smith-Scott violated Rule 1.5 as it relates to Ms. Plater. Ms. Smith-Scott excepts to the hearing judge's conclusion and makes identical arguments as those in reference to Ms. Combs' payments. Ms. Plater paid Ms. Smith-Scott $2,000 to prosecute an appeal before the Court of Special Appeals. Specifically, Ms. Smith-Scott agreed to author and file an appellate brief on Ms. Plater's behalf. However, after collecting Ms. Plater's payments, Ms. Smith-Scott failed to perform any meaningful legal work on the appeal. Ms. Smith-Scott then refused to provide Ms. Plater a full refund. Instead, Ms. Smith-Scott twice offered Ms. Plater approximately half of the amount actually due to Ms. Plater.

Ms. Smith-Scott attempted to justify her retention of Ms. Plater's payment by claiming that she provided Ms. Plater with additional legal services. Ms. Smith-Scott did not specify the legal services performed or provide Ms. Plater with an invoice. The hearing judge specifically rejected Ms. Smith-Scott's testimony that she performed additional legal

63

services in Ms. Plater's foreclosure action—i.e., related to Ms. Plater's Motion for Reconsideration. The hearing judge did, however, credit Ms. Plater's testimony that she paid for the preparation of the Motion for Reconsideration on July 12, 2016.

We agree with the hearing judge's conclusions and overrule Ms. Smith-Scott's exception. Clear and convincing evidence demonstrates that Ms. Smith-Scott's conduct vis-à-vis Ms. Combs and Ms. Plater violated Rule 1.5.

6. *Rule 1.6 (Confidentiality).*

Rule 1.6 provides:

(a) An attorney shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by section (b) of this Rule.

(b) An attorney may reveal information relating to the representation of a client to the extent the attorney reasonably believes necessary:

\*\*\*

(5) to establish a claim or defense on behalf of the attorney in a controversy between the attorney and the client, to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the attorney based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the attorney's representation of the client[.]

Comment 6 to Rule 1.6 addresses the manner in which an attorney may, to the extent necessary, disclose confidential information adverse to the client. Comment 6 provides, in pertinent part:

Where practicable, the attorney should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the attorney

64

reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the attorney to the fullest extent practicable.

In *Attorney Grievance Commission v. Powers*, we noted the "*broad ethical duty* not to divulge information about a client." 454 Md. 79, 94 (2017) (quoting Charles W. Wolfram, Modern Legal Ethics § 6.1.1, at 242 (1986) (emphasis in original)). There, we concluded that an attorney violated Rule 1.6 by disclosing confidential information without the client's informed consent in a lawsuit brought in federal court—i.e., a public forum— to recover money the attorney believed the client owed. *Id.*

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.6 when she intentionally attached, as exhibits, confidential email communications exchanged with Ms. Saunders in a motion filed with the Bankruptcy Court. Ms. Smith-Scott neither attempted to obtain Ms. Saunders' permission to disclose these confidential communications nor take any preventative measures to limit the disclosure, such as filing the motion under seal. Ms. Smith-Scott excepts to this conclusion and argues that under Rule 1.6(b) generally, and (b)(5) in this case, an attorney is not required to obtain informed consent or place a confidential disclosure under seal.

Ms. Saunders filed a *pro se* Motion/Request for Release of Attorney requesting that the Bankruptcy Court "release" Ms. Smith-Scott as her attorney "based upon unsatisfactory actions and irreconcilable differences in miscommunication that may have affected [Ms. Saunders'] bankruptcy process and may impact the outcome of [her] case." Ms. Smith-

Scott filed a Response in Support of Debtor's Motion/Request for Release of Attorney. With this filing, Ms. Smith-Scott attached confidential email exchanges with Ms. Saunders that occurred between August 4, 2017 and December 20, 2017. Even after confronted by Ms. Saunders about the disclosure of confidential material, Ms. Smith-Scott failed to take any remedial action.

We overrule Ms. Smith-Scott's exception based on a plain reading of Rule 1.6(b)(5). We pause to emphasize that Ms. Smith-Scott *supported* Ms. Saunders' motion to remove Ms. Smith-Scott as counsel. Clearly then, Ms. Smith-Scott did not disclose the communications "to establish a claim or defense on behalf of the attorney." Rule 1.6(b)(5). Indeed, Ms. Smith-Scott herself indicated the reason for the disclosure: to "allow[] the Court to get a better understanding of the actions of Legal Counsel." Rule 1.6(b) does not permit an attorney to indiscriminately disclose confidential communications simply for context—especially where an attorney disregards the protective measures contemplated in the comments to Rule 1.6 in the event a disclosure is necessary. Therefore, we agree with the hearing judge that clear and convincing evidence demonstrates that Ms. Smith-Scott violated Rule 1.6 during her representation of Ms. Saunders.

7.  *Rule 1.15 (Safekeeping Property) & Rule 19-404 (Trust Account—Required Deposits).*

Rule 1.15 provides, in pertinent part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and

66

records shall be created and maintained in accordance with the Rules in that Chapter.[16]

***

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

Simply put, when an attorney is entrusted with a client's money, "[s]uch funds are to be placed in an attorney trust account in accordance with Maryland Rule 19-404." *Attorney Grievance Comm'n v. Singh*, 464 Md. 645, 673 (2019). An attorney violates Rule 1.15 "when the attorney 'does not deposit trust funds into an attorney trust account and does not obtain the client's informed consent to do otherwise.'" *Planta*, 467 Md. at 352 (quoting *Hamilton*, 444 Md. at 189–90). An attorney may also violate this Rule by depositing a client's money into his or her personal or operating account before the money is earned. *Guida*, 391 Md. at 53.

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.15 and Rule 19-404 by failing to deposit and maintain the unearned portion of Ms. Combs' $2,500 payment

---

[16] Rule 19-404 provides:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

on October 14, 2015 in an attorney trust account until earned as fees or used for expenses. Ms. Smith-Scott did not obtain Ms. Combs' informed consent in writing to deposit the funds in a non-attorney trust account.

In its conclusions of law, the hearing judge noted "Bar Counsel represented . . . that it was withdrawing, among other things, its allegations pursuant to [Rule] 1.15 . . . with respect to Ms. Plater. Accordingly, the Court does not find that [Ms. Smith-Scott] violated [Rule 1.15] as to Ms. Plater." Bar Counsel excepts to the hearing judge's failure to conclude that Ms. Smith-Scott violated Rule 1.15 with respect to Ms. Plater's property. Bar Counsel argues that it withdrew the Rule 1.15 charge in connection with Ms. Plater's payments *before* July 2016 and not *after* July 2016. Moreover, the hearing judge found that Ms. Smith-Scott failed to deposit and maintain Ms. Plater's two September 2016 installment payments of $1,000 each in an attorney trust account until earned.

Ms. Smith-Scott excepts to the hearing judge's conclusion that she violated Rule 1.15 and Rule 19-404. She reiterates the same argument she asserted in relation to Rule 1.5 and adds that "her failure to correctly deposit the fees was not intentional misappropriation of fees; rather[,] it was negligent management." However, a violation of Rule 1.15 does not turn on an attorney's intent. A violation of this Rule plainly occurs when an attorney fails to deposit a client's funds into an attorney trust account.

Ms. Combs paid Ms. Smith-Scott $2,500 on October 14, 2015. Of this lump sum, Ms. Combs paid $1,000 for legal services already provided; the remaining $1,500 constituted a retainer against which Ms. Smith-Scott would bill future legal services. Ms. Smith-Scott did not deposit the unearned portion—$1,500—in an attorney trust account.

68

Ms. Plater paid two $1,000 installments to Ms. Smith-Scott on September 7, 2016 and September 22, 2016 to advance an appeal before the Court of Special Appeals. Ms. Smith-Scott failed to deposit and maintain Ms. Plater's checks in an attorney trust account.

Based on our independent review, we sustain Bar Counsel's exception and overrule Ms. Smith-Scott's exception. Clear and convincing evidence demonstrates that Ms. Smith-Scott violated Rule 1.15 with respect to both Ms. Combs and Ms. Plater.

*8.      Rule 1.16 (Declining or Terminating Representation).*

Rule 1.16 provides, in pertinent part:

(d) Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

"The failure to return unearned fees and documents regarding the representative matter violates this Rule." *Planta*, 467 Md. at 354 (citing *Hamilton*, 444 Md. at 1921).

The hearing judge concluded that Ms. Smith-Scott violated Rule 1.16 by (1) failing to refund to Ms. Combs the unearned portion of the $4,986.13 charge on February 23, 2017, some or most of which Ms. Combs did not owe; (2) failing to refund Ms. Combs the $200 payment made on April 12, 2017 that Ms. Smith-Scott conceded Ms. Combs did not owe; and (3) failing to refund Ms. Plater unearned legal fees totaling $2,000.

Ms. Smith-Scott does not except to this conclusion. Our independent review of the record confirms that clear and convincing evidence supports the hearing judge's conclusion that Ms. Smith-Scott's conduct violated Rule 1.16.

9.     *Rule 3.1 (Meritorious Claims and Contentions).*

Rule 3.1 provides:

An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law.  An attorney may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

Comment 2 to Rule 3.1 states that an "action is frivolous . . . if the attorney is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." In *Attorney Grievance Commission v. Kane*, we recognized a violation of Rule 3.1 in connection to an attorney's serial bankruptcy filings, which were all designed to delay the proceedings and frustrate the creditors.  465 Md. 667, 716–17 (2019).

The hearing judge concluded that Ms. Smith-Scott violated Rule 3.1 when she filed numerous baseless pleadings, motions and appeals in her personal bankruptcy action. Moreover, the hearing judge found that Ms. Smith-Scott's "sole objective in her bankruptcy case after April 8, 2015—the date the Chapter 7 Trustee was appointed—was to obstruct, delay and frustrate the Chapter 7 Trustee's ability to administer the estate in a timely and orderly fashion."  Ms. Smith-Scott's actions over the two-year bankruptcy action were not supported by law or fact, and in most instances, were not legally permitted.

Evidence of Ms. Smith-Scott's frivolous litigation includes: (1) several motions and appeals in her federal lawsuit against U.S. Bank, including two appeals to the U.S. Court of Appeals for the Fourth Circuit, despite the Trustee's admonishment that she lacked

standing; (2) motions to alter or amend in the Bankruptcy Court when that court had no jurisdiction to adjudicate the matters because of Ms. Smith-Scott's own actions; (3) motions to re-appeal Bankruptcy Court orders that had already been affirmed on appeal; (4) filings that opposed the Trustee's attempts to sell real property despite a lack of standing; (5) the filing of appeals and other pleadings and then intentionally failing to prosecute the matters; (6) the filing of untimely appeals and motions; (7) the continuous advancement of arguments that were meritless; and (8) the numerous unfounded allegations of misconduct against all involved parties, including the court, that Ms. Smith-Scott knew, or should have known, to be false.

Ms. Smith-Scott does not except to this conclusion. The hearing judge's conclusion that Ms. Smith-Scott violated Rule 3.1 is abundantly supported by clear and convincing evidence.

10.     *Rule 3.2 (Expediting Litigation).*

Rule 3.2 provides that "[a]n attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client." Rule 3.2 applies with equal force to an attorney who represents himself or herself. *See Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 216–17 (2015) (concluding that the language of Rule 3.2 "does not except attorneys who represent themselves from the obligation to make reasonable efforts to expedite litigation"). This Court has noted that "[a]n attorney violates this rule by delaying to take fundamental litigation steps in pursuit of the client's interest." *Garrett*, 427 Md. at 226. Indeed, we have found a violation of this Rule when an attorney fails to file an

appellate brief and appendix, causing a significant delay in the resolution of an appeal. *See Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 271 (2016).

The hearing judge concluded that Ms. Smith-Scott violated Rule 3.2 when she (1) failed to file Ms. Plater's appellate brief by the filing deadline or otherwise prosecute Ms. Plater's appeal; and (2) intentionally hindered—for two years—the Chapter 7 Trustee's ability to administer her bankruptcy case in a timely fashion.

Ms. Smith-Scott does not except to this conclusion. Based on our independent review of the record, we agree with the hearing judge that Ms. Smith-Scott's conduct violated Rule 3.2.

*11.    Rule 3.3 (Candor Toward the Tribunal).*

Rule 3.3 provides, in pertinent part:

(a) An attorney shall not knowingly:

> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney;
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client[.]

We have observed that "the requirement of candor towards the tribunal . . . requires every attorney to be fully honest and forthright." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 703 (2013) (quoting *In re Discipline of Wilka*, 638 N.W.2d 245, 249 (S.D. 2001)). This is because "[e]very court . . . has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it. Therefore, candor and fairness should characterize the conduct of an attorney at the beginning, during, and at the close of litigation." *Id.* (quoting *In re Discipline of Wilka*, 638 N.W.2d at 249. Accordingly, an

72

attorney violates Rule 3.3(a)(1) "when he or she knowingly provides the court with false information . . . or fails to correct any false information previously provided." *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 195 (2018) (citations omitted).

The hearing judge concluded that Ms. Smith-Scott violated Rule 3.3 when she (1) indicated that Ms. Plater agreed to pay a flat fee of $4,200 on a Disclosure of Compensation of Attorney for Debtor, yet Ms. Plater actually agreed to pay a flat fee of $1,500; and (2) knowingly made numerous false statements of fact in motions and appeals before the Bankruptcy Court and U.S. District Court throughout the course of her personal bankruptcy action. Ms. Smith-Scott generally excepts to this conclusion. As best we can tell, she argues that she had "competency and diligence issues caused by personal involvement and inexperience, but the record does not support a conclusion that Ms. Smith-Scott was knowingly and intentionally dishonest."

However, as to the misrepresentation made on the Disclosure of Compensation of Attorney for Debtor, Ms. Smith-Scott knew the statement to be false at the time she filed the disclosure. Ms. Plater even challenged Ms. Smith-Scott's decision to list $4,200 as the agreed upon fee, because that did not comport with their agreement. Nonetheless, Ms. Smith-Scott filed the petition fully aware of the misrepresentation.

As to Ms. Smith-Scott's false statements in her personal bankruptcy action, Ms. Smith-Scott knowingly made false statements of fact in motions and appeals before the Bankruptcy Court and U.S. District Court. Specifically, she falsely alleged that Mr. Shively engaged in criminal conduct when he acted to secure 367 Main Street and had committed perjury at the May 16, 2017 contempt hearing.

Consequently, we agree with the hearing judge and overrule Ms. Smith-Scott's exceptions. Clear and convincing evidence demonstrates that Ms. Smith-Scott violated Rule 3.3.

12. *Rule 3.4 (Fairness to Opposing Party and Attorney).*

"An attorney shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 3.4(c). On this point, *Attorney Grievance Commission v. Byrd* is particularly instructive. 408 Md. 449 (2009). In *Byrd*, we concluded that a Rule 3.4(c) violation occurred where the attorney "contravened the bankruptcy court's order . . . after already having been found in contempt for violating" a prior order of the court. *Id.* at 469. We found an additional violation of the Rule in Byrd's failure to vacate his property, as ordered by the bankruptcy court. We recognized then, and because of its applicability here we reiterate today, "that we will not 'go behind' the bankruptcy court's finding of contempt" and we accept the hearing judge's "findings concerning those rulings." *Id.* at 482.

The hearing judge concluded that Ms. Smith-Scott violated Rule 3.4 when she (1) knowingly and intentionally disobeyed several orders of the Bankruptcy Court; and (2) failed to disclose to the Bankruptcy Court the receipt of additional fees related to her representation of Ms. Combs in violation of Bankruptcy Rule 2016(b). Again, Ms. Smith-Scott generally excepts without offering any degree of specificity as to why the hearing judge's conclusion is erroneous.

Ms. Smith-Scott intentionally defied the following: (1) the October 29 Order prohibiting Ms. Smith-Scott's use of cash collateral—which resulted in a contempt finding;

(2) the September 24 Order compelling Ms. Smith-Scott to attend the § 341 meeting of creditors; (3) the Bankruptcy Court's September 29, 2015 Order compelling Ms. Smith-Scott to turn over documentation related to her tenancies, security deposits, and taxes; and (4) the Bankruptcy Court's May 16, 2016 Order directing that Ms. Smith-Scott pay the Trustee sanctions as a result of her contempt. Most egregious of all, Ms. Smith-Scott openly defied the Bankruptcy Court's March 22, 2016 Order compelling her to vacate 367 Main Street, which resulted in a second contempt finding. Indeed, Ms. Smith-Scott only vacated the premises after U.S. Marshals accompanied Mr. Shively to 367 Main Street and explained to Ms. Smith-Scott's employees that they would be handcuffed if they did not vacate the property.

We overrule Ms. Smith-Scott's exception. Clear and convincing evidence supports the hearing judge's conclusion that Ms. Smith-Scott's conduct violated Rule 3.4.

13.    *Rule 4.1 (Truthfulness in Statements to Others).*

Rule 4.1 provides, in pertinent part:

(a) In the course of representing a client an attorney shall not knowingly:

> (1) make a false statement of material fact or law to a third person; or
> (2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

This Rule is exceedingly straightforward. The hearing judge concluded that Ms. Smith-Scott violated Rule 4.1 when she falsely stated in her August 3, 2015 letter to the tenants of her Laurel Properties that Patapsco Bank did not have a court order to collect rents. On June 25, the Bankruptcy Court issued orders permitting Patapsco Bank to foreclose on the properties and collect rent. Ms. Smith-Scott intentionally concealed the existence of these

orders so that the tenants would continue to pay rent to her directly. Ms. Smith-Scott generally excepts to this conclusion. We shall overrule it because we agree with the hearing judge; clear and convincing evidence exists to support its conclusion that Ms. Smith-Scott violated Rule 4.1.

*14.    Rule 8.1 (Bar Admission and Disciplinary Matters).*

Rule 8.1 provides, in pertinent part:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

"Rule 8.1(b) compels attorneys to demonstrate candor and cooperation with the disciplinary authorities of the Bar." *Planta*, 467 Md. at 356. A violation of Rule 8.1(b) occurs if an attorney "does not 'answer timely requests from the Attorney Grievance Commission regarding a complaint in a potential disciplinary matter.'" *Id.* (quoting *Hamilton*, 444 Md. at 192).

The hearing judge concluded that Ms. Smith-Scott violated Rule 8.1 when she (1) attached a knowingly false statement, originally made to Wells Fargo, in her response to Bar Counsel regarding the $4,986.13 charge to Ms. Combs' credit card; (2) intentionally misrepresented to Bar Counsel that she justifiably withheld fees in Ms. Plater's representation, when in fact she intentionally concealed the fact that Ms. Plater had paid

separately for that legal work; (3) knowingly misrepresented to Bar Counsel that the Chapter 7 Trustee intentionally omitted and misrepresented facts to the Bankruptcy Court; and (4) failed to timely and completely respond to Bar Counsel's inquiries. Ms. Smith-Scott generally excepts to these conclusions.

Ms. Combs filed a complaint against Ms. Smith-Scott with the Commission in relation to the unauthorized $4,986.13 credit card charge. Ms. Smith-Scott submitted a response to the complaint and attached (1) the written submission she sent to Wells Fargo during its independent investigation and (2) two invoices Ms. Smith-Scott knew to be inaccurate. The written statement included false representations concerning Ms. Combs' authorization. Ms. Smith-Scott thereby intentionally gave Bar Counsel the false impression that Ms. Combs owed the $4,986.13 amount, despite knowing that it was not an accurate figure. Ms. Smith-Scott relied on her knowingly false statements in the Wells Fargo statement to intentionally mislead Bar Counsel into believing the invoices were accurate and the charge was authorized. Ms. Smith-Scott submitted a second response to Bar Counsel intentionally misrepresenting that Invoice #23 and Invoice #31 were accurate, despite knowing full well that they were not.

Ms. Plater also filed a complaint against Ms. Smith-Scott with the Commission. Ms. Smith-Scott's response intentionally misrepresented that she earned $825 for legal work performed during the pendency of Ms. Plater's appeal. The response further claimed that Ms. Smith-Scott "met with Ms. Plater; identified legal issues to pursue on appeal; prepared a Civil Information Sheet; filed a motion to stay the foreclosure pending the appeal; and

77

filed a motion to mitigate the necessity of a supersedeas bond." Ms. Smith-Scott intentionally concealed from Bar Counsel that Ms. Plater paid separately for those fillings.

We therefore agree with the hearing judge that clear and convincing evidence supports a conclusion that Ms. Smith-Scott violated Rule 8.1. We overrule Ms. Smith-Scott's exception.

*15.    Rule 8.4 (Misconduct).*

Rule 8.4 provides, in pertinent part:

> It is professional misconduct for an attorney to:
>
> (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 8.4(a) when he or she violates other Rules of Professional Conduct. *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 195 (2009). Regarding the criminal act in Rule 8.4(b), "[i]t is well established that a conviction is not required to find a violation." *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 729 (2014). Instead, in determining if an attorney violated Rule 8.4(b), we consider "whether an attorney's criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." *Id.* at 729–30 (quoting *Attorney Grievance Comm'n*

*v. Thompson*, 367 Md. 315, 324 (2001) (internal quotation marks omitted)). Rule 8.4(c) encompasses a "broad universe of mis-behavior." *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 39 (2014). The Rule "is violated by making misrepresentations to the client, which includes the concealment of material information from the client." *Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 640 (2015); *see Brown*, 426 Md. at 324 (finding a violation of Rule 8.4(c) where an attorney concealed the dismissal of client's case by misrepresenting status as pending); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 168 (2010) (finding a violation of Rule 8.4(c) where an attorney failed to disclose that the court dismissed client's case with prejudice).

"[C]onduct prejudicial to the administration of justice" is that which "reflects negatively on the legal profession and sets a bad example for the public at large." *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22 (2007). An attorney's failure "to appear in court at a hearing on behalf of his or her client constitutes conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 556 (2014). Indeed, this is because "[a]n attorney plays such an integral role in the judicial process that without his [or her] presence the wheels of justice must, necessarily, grind to a halt." *Id.* (quoting *Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 232 (2012)). Furthermore, we have said that

> [an attorney's] failure to promptly, completely and truthfully respond to Bar Counsel's requests for information, to keep his client advised of the status of the representation and to diligently represent the complainant constitutes conduct which tends to bring the legal profession into disrepute and is therefore prejudicial to the administration of justice.

79

*Brown*, 426 Md. at 324–25 (quoting *Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 111 (2006)).

The hearing judge concluded that Ms. Smith-Scott violated Rule 8.4 in a plethora of ways:

- Ms. Smith-Scott violated Rule 8.4(b) and (c) when she charged Ms. Combs' credit card in the amount of $4,986.13 without Ms. Combs' authorization and with knowledge that Ms. Combs disputed the balance.

- Ms. Smith-Scott violated Rule 8.4(c) when she refused to provide Ms. Combs with accurate billing statements and then intentionally misappropriated Ms. Combs' fees that were not yet earned.

- Ms. Smith-Scott violated Rule 8.4(c) when she misrepresented to Ms. Combs that she had filed the Motion for Reconsideration in the Bankruptcy Court.

- Ms. Smith-Scott violated Rule 8.4(c) when she accepted Ms. Plater's payments, did not complete any substantive work toward Ms. Plater's appeal, and misappropriated a portion of Ms. Plater's funds for her personal use and benefit.

- Ms. Smith-Scott violated Rule 8.4(c) and (d) when she made several knowing and intentional misrepresentations to Bar Counsel discussed in relation to Rule 8.1.

- Ms. Smith-Scott violated Rule 8.4(c) when she knowingly and intentionally disobeyed court orders in her personal bankruptcy case and interfered with Patapsco Bank's efforts to collect rent from the tenants of the Laurel Properties.

- Ms. Smith-Scott violated Rule 8.4(c) when she repeatedly and intentionally made arguments in bad faith and filed documents without substantial justification in her personal bankruptcy case for the sole purpose of retaining her property and obscuring her creditors' rights to collect on debts owed to them.

- Ms. Smith-Scott violated Rule 8.4(c) when she intentionally misrepresented to the Bankruptcy Court that Mr. Shively (1) engaged in criminal activity while taking possession of 367 Main Street; and (2) perjured himself at the May 16, 2016 contempt hearing.

- Ms. Smith-Scott violated Rule 8.4(c) when she was dishonest in her communications with Bar Counsel.

- Ms. Smith-Scott violated Rule 8.4(d) because her conduct, taken as a whole, brings the legal profession into disrepute, and is therefore prejudicial to the administration of justice.

- Ms. Smith-Scott violated Rule 8.4(d) when she filed several actions or motions on behalf of Ms. Combs, Ms. Plater, and Ms. Deeba and then intentionally failed to prosecute the matters.

- Ms. Smith-Scott violated Rule 8.4(d) when she failed to attend court hearings on behalf of Ms. Combs, Ms. Deeba, Mr. Jones, and herself in her personal bankruptcy case.

- Ms. Smith-Scott violated Rule 8.4(d) when she engaged in a vexatious and harassing litigation strategy in her personal bankruptcy case with the objective of frustrating and obstructing the orderly resolution of the case; specifically, Ms. Smith-Scott (1) filed bad faith pleadings, motions and appeals; and (2) failed to appear at several hearings, defied and ignored several court orders, and was held in civil contempt on two occasions.

- Ms. Smith-Scott violated Rule 8.4(a) because she violated Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.15, 1.16, 3.1, 3.2, 3.3, 3.4, 4.1, 8.1, 8.4, and 19-404.

Ms. Smith-Scott generally excepts to the hearing judge's conclusion that she violated Rule 8.4. Based on our independent review, a majority of which has already been discussed in relation to other rule violations, we agree with the hearing judge. We overrule her exception because clear and convincing evidence exists to support violations of Rule 8.4(a), (b), (c) and (d).

## SANCTION

As we have often stated, the purpose of attorney disciplinary proceedings is to protect the public and deter other lawyers from engaging in misconduct rather than simply to punish the lawyer. *Attorney Grievance Comm'n v. Mollock*, 450 Md. 133, 158 (2016). The public is protected when sanctions are "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005) (citing *Attorney Grievance Comm'n v. Ellison*, 384 Md. 688, 714 (2005)).

Bar Counsel recommended that we disbar Ms. Smith-Scott for her "persistent course of dishonest and deceitful conduct with her clients, the courts, her tenants, and bar Counsel." Ms. Smith-Scott, instead, argues that a reprimand is a more appropriate sanction because she has no "prior record of discipline" and there is "no evidence of improper motive."

"In fashioning an appropriate sanction in attorney disciplinary proceedings, '[w]e determine the appropriate sanction by considering the facts of the case, as well as balancing any aggravating or mitigating factors.'" *Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 67 (2019) (quoting *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 337 (2013)). An attorney bears the burden of proving evidence of mitigation by a preponderance of the evidence. *See* Md. Rule 19-727(c).

We have noted that "[a]ggravating factors[17] militate in favor of a more severe sanction[.]" *Sanderson*, 465 Md. at 67 (alterations in original) (quoting *Kremer*, 432 Md. at 337). The hearing judge found the following aggravating factors: (1) a dishonest or selfish motive; (2) a pattern of misconduct; (3) multiple violations of the MLRPC and MARPC; (4) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; and (5) an indifference to making restitution or rectifying the misconduct's consequences.

Ms. Smith-Scott contends that the hearing judge should not have found a dishonest or selfish motive, submission of false evidence, or an indifference to making restitution. The record, however, belies Ms. Smith-Scott's arguments. Mindful of Ms. Smith-Scott's cursory arguments as to why we should part ways with these factors found by the hearing judge, we decline to do so. We believe Bar Counsel proved the existence of these factors in accord with the standards of Md. Rule 19-727(c).

---

[17] Aggravating factors include:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [rules of professional conduct]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Allenbaugh*, 450 Md. at 277.

Unlike aggravating factors, "the existence of mitigating factors[18] tends to lessen or reduce the sanction an attorney may face." *Id.* at 70 (citing *Kremer*, 432 Md. at 338). The hearing judge found the following mitigating factors: (1) the absence of prior attorney discipline; (2) personal or emotional problems; (3) inexperience in the practice of law; (4) remorse; and (5) the unlikelihood of repetition of the misconduct.

Ms. Smith-Scott asserts that the hearing judge should have found the following additional mitigating factors: (1) the absence of a dishonest or selfish motive; (2) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (3) a cooperative attitude toward the attorney discipline proceeding; and (4) character or reputation. Ms. Smith-Scott failed to establish the existence of these mitigating factors by a preponderance of evidence. *See* Md. Rule 19-727(c). Aside from excerpts of witness

---

[18] Mitigating factors include:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the [rules of professional conduct]; and (14) unlikelihood of repetition of the misconduct.

*Allenbaugh*, 450 Md. at 277–78.

testimony regarding her character, Ms. Smith-Scott does not, and cannot, point to evidence contained in the record to show the existence of these mitigating factors.

In *Attorney Grievance Commission v. Vanderlinde*, we stated that

in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the [Rules of Professional Conduct.] Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

364 Md. 376, 413–14 (2001). We further explained that disbarment is often the appropriate sanction in these types of cases because "[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Id.* at 418.

We have also held that "the misappropriation of entrusted funds 'is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.'" *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161 (2005) (quoting *Attorney Grievance Comm'n v. James*, 385 Md. 637, 666 (2005)). "Fiduciaries in general, and attorneys in particular, must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order." *Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345 (1991). An attorney "must carefully administer and account for those funds.

85

Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated." *Id.*

In this case, we have concluded that Ms. Smith-Scott engaged in intentional dishonest conduct *and* that she misappropriated client funds entrusted to her. While this conduct is troubling in its own right, the magnitude of Ms. Smith-Scott's misconduct is exacerbated by the fact that she violated *sixteen* different rules of professional conduct, often numerous times and across the representation of multiple clients. Ms. Smith-Scott's conduct in her personal bankruptcy case further compounds the problematic nature of this case. Ms. Smith-Scott willfully disregarded lawful orders of the Bankruptcy Court and U.S. District Court and was found in civil contempt by those courts.

One order of the Bankruptcy Court fittingly describes much of the vexatious, three-year bankruptcy proceeding: allegations replete with "unsupported, irrational, [and] highly tenuous speculation." Or, another by the U.S. District Court, describing one of Ms. Smith-Scott's motions, devoid of factual predicate, as "rely[ing] upon the sheer audacity of her [own] allegations." Surely, this misuse of the judicial system and misconduct of this sort is that which "casts our noble profession in a most unfavorable light." *Attorney Grievance Comm'n v. Collins*, ___ Md. ___, ___ (2020). It follows, then, that a reprimand or suspension would not be sufficient to protect the public or serve as a deterrent to other attorneys.

**CONCLUSION**

Based on our assessment of Ms. Smith-Scott's wide-ranging misconduct, the existence of aggravating factors, and the limited mitigating factors present here, we agree

with Bar Counsel and hold that the appropriate sanction is disbarment. For the above reasons, we disbarred Ms. Smith-Scott and awarded costs against her by per curiam order dated January 10, 2020.